WILEY POOL AND WIFE, plaintiffs in error, vs. RICHARD MORRIS, et al., defendants in error.

[1.] The admissions of a life-tenant are not evidence against the remainderman; they are not privies in estate, a privy being a successor to the *same estate*, and not to a different estate in the same property.

[2.] One of two joint complainants has a right under our statute to amend the bill by striking his name as complainant, and inserting it as defendant.

[3.] One estate can not be *merged* in another, unless both estates are owned by the same person in the *same right*.

[4.] Men are to be presumed to intend that which they have the right and power to do, rather than what is beyond their right and power.

In Equity, in Henry Superior Court. Tried before Judge CABANISS, April Term, 1859.

This was a bill filed by Wiley Pool and his wife, Elizabeth, against Richard Morris, and Absalom R. Allen, seeking the partition of certain negroes, and to set up Mrs. Pool's equity in the share or interest coming to complainants.

The facts of the case are about as follows: In 1814, Absalom Ramey, and Daniel Ramey, of the county of Clark, executed their respective deeds of gift, conveying to Nancy

Allen, certain slaves for her life, and at her death remainder to her three children, Absalom R. Allen, Naomi Allen, and Elizabeth Allen, and to any other children she might have. Naomi intermarried with Richard Morris, one of the defendants, and Elizabeth intermarried with Wiley Pool, the complainant. Nancy Allen never had any other children, and she and her husband James Allen, retained the use and possession of the negroes and their increase till 1828, when the remaindermen all being of age, and Naomi and Elizabeth being married as aforesaid, said Nancy and her husband relinquished and surrendered their life estate in said negroes to Richard Morris, Wiley Pool and Absalom R. Allen, who had a division thereof, and each took possession of the share allotted or assigned to him, and entered into bonds, conditioned, to contribute and pay yearly a sum sufficient to maintain and support the said Nancy during her life. Upon this division Morris received four negroes, Pool three, and Absalom R. Allen two, and the difference in the value of these lots was equalized by the payment of money from one to the other. James Allen died about 1844, and Nancy Allen, the tenant for life, died in 1857. And this bill was filed by Pool and wife, alleging that the division made in 1828, was temporary and partial, and that it was the agreement and understanding of the parties, that at the death of the tenant for life, the said negroes and their increase in the hands of the respective remaindermen, were to be partitioned and a final and equal division then made. That said negroes and their increase now amounted to twenty-four, of which number Richard Morris had eighteen. The bill further alleged that Elizabeth Pool had nine children, and prayed that her share or interest of said negroes be settled on her and her children.

The defendant Morris answered the bill, and admitted the facts as therein stated, in relation to the deeds of gift from the Ramey's; and admitted that Nancy Allen and her husband relinquished their life estate in said negroes, and that there

was a division thereof amongst the remaindermen in 1828, but denied that such division was temporary, but on the contrary, avers, that the same was final, and that each party received the share thus allotted and assigned, absolutely and unconditionally, and in fee simple, and took possession of the same. That he has held possession of the negroes set apart to him upon said division, and their increase, ever since, or has held, claimed and treated them as his own absolutely; and he denies that complainants have any right, title or claim, in or to the same or any part thereof.

Defendant Morris, further pleaded the statute of limitation and lapse of time.

Upon the trial, defendants, amongst other things, offered in evidence the bonds executed by Morris, Pool and Absalom R. Allen, conditioned, to maintain and support Nancy Allen during her life, as stated in the bill. Complainants objected to their introduction; the objection was overruled, and the bonds were admitted as part of the *res gestæ* at the division of the negroes, and complainants excepted.

Defendants next proposed to read the depositions of a number of witnesses, and to examine others, as to the sayings and declarations of James and Nancy Allen, in relation to their relinquishment of their life estate in said negroes. Complainants objected to said declarations. The Court overruled the objection, and admitted the evidence, and complainants excepted.

Defendants offered in evidence a bill of sale from Absalom R. Allen, to defendant Morris, for one of the negroes allotted to and received by him at the division. Complainants objected to its admission; the Court admitted it to the extent, that it might affect Absalom's interest. To which ruling complainant excepted.

Complainants during the trial, moved to amend their bill by striking therefrom, the name of Wiley Pool as complainant, and making him a party defendant, and to insert the

name of William W. Clarke as a complainant and next friend of Mrs. Pool.    The Court refused to allow the amendment, and complainants excepted.

The Court charged the jury as follows:

"Absalom and Daniel Ramey conveyed certain negroes to Absalom R. Allen, Naomi and Elizabeth Allen, children of Nancy Allen, with a use for life to Nancy Allen, and at her death to be equally divided between her three children.    The legal effect of the deeds was to convey a life estate in the property to Nancy Allen, with remainder to her children. This was a vested remainder.    The title to the property vested in Absalom R., Naomi and Elizabeth Allen, upon the execution of the deeds by Absalom and Daniel Ramey, but the possession and use by them was postponed until the death of Nancy Allen.    Then title was vested, and upon the marriage of Naomi and Elizabeth Allen, their interest in the property whatever it was, vested in their husbands, and their husbands by marriage, acquired the right to reduce their shares of the property into possession upon the termination of the estate of the life-tenant, subject to their equity to have their shares settled to their separate use.    Nancy Allen having a life estate in the property, had the right by herself or by her husband to relinquish it to those who were entitled to the remainder, and if the relinquishment was made by her husband, and she gave her assent to it, and ratified it by accepting and carrying out the terms of the agreement, it became hers, and was as valid as if made by her.    When that relinquishment was made, the life estate of Nancy Allen was extinguished; it became extinct, by uniting with and merging in the estate in remainder; and the life estate of Nancy Allen being extinguished, the estate of the remaindermen became absolute and unconditional. They then had the right to reduce the property into possession, and to divide it, either temporarily or permanently, as they might deem proper.

If they proceeded to reduce the property into possession, and to make a final division of it, then was the time for the wife of Pool to assert her equity and her right to a separate settlement of her share. If she permitted a permanent division of the property to be made, and her share to go into the possession of her husband, without setting up or asserting her equity, she is barred from setting it up afterwards. When the life estate of Nancy Allen was extinguished by merging in the estate in remainder, Wiley Pool and wife had the right to reduce her share into possession. The only restriction to which that right was subject was a right on her part to set up her equity to her share, before her husband reduced it into possession; but if she permitted it to go into his possession without asserting her equity, her right to have it settled to her separate use is lost. When the life estate of Nancy Allen was relinquished to the remaindermen, their estate became absolute, and they could make such division of the negroes as they saw proper, and if the division then made, was merely temporary, with an understanding that a final and permanent division was to be made at the death of Nancy Allen, such temporary division did not vest a title to any specific portion of the negroes in either of the children of Nancy Allen; upon such division there was not such a reduction into possession, as to vest a title in Absalom R. Allen, Wiley Pool and Richard Morris, to the negroes respectively assigned them. If that was the division then made by the parties, Elizabeth Pool, upon the death of Nancy Allen, has the right to have a final and permanent division of the negroes, made according to the terms of the deeds of Absalom and Daniel Ramey; and Wiley Pool, the husband of Elizabeth Pool, never having reduced her share of the negroes into possession, her equity attaches to her share, and upon the partition which may be decreed, she has the right to have her share settled to her separate use, and the use and benefit of her children, free from the control of her husband and from any liability for his debts, and such division must

include all the negroes and their increase and profit; the negroes received by Pool and Absalom Allen as well as those received by Morris.

But if, when the life estate of Nancy Allen was relinquished to her children, they were all of age and competent to act for themselves, and if they then agreed to make a final and permanent division of the negroes, and did make such division by agreement among themselves, they are now concluded by that division and must abide by it. Such division vested a perfect title in them to their respective shares; and the jury should not decree any farther division, and when that division was made, and the shares of each were taken possession of by them respectively, that was such a reduction into possession by Wiley Pool of his wife's share, as to bar her equity and her right to have her share settled upon her, and that division also vested a complete title in Absalom Allen and Richard Morris to their respective shares. If therefore you believe from the testimony that such final and permanent division was made by the parties, you should find for the defendants."

Counsel for complainant request the Court to charge:

1st. That the equity of Elizabeth Pool cannot be barred by any act of her husband, without her consent and approval.

2d. That the Ramey deeds conveyed such an interest to Elizabeth Pool in the property, that no reduction into possession by her husband pending the life estate, or during the life of the tenant for life, could bar her equity.

3d. That by the terms of the deeds, the interest conveyed to Elizabeth Pool could not vest in possession until the death of Nancy Allen, and that any act, agreement or contract of her husband, by which the use for life of Nancy Allen was affected or destroyed, could not bar the wife's equity in the remainder vested by the deeds.

4th. That if the jury should believe, that Pool, Morris

and Allen, purchased the life estate of Nancy Allen, and divided the negroes, that such division referred only to the life estate, unless it was then and there agreed that the remainder as well as the life estate should be divided, which must be expressly shown.

5th. If the jury should believe from the evidence, that Pool, Morris and Allen entered into an agreement with James and Nancy Allen, for the support of said Nancy for life, in consideration that the negroes should be given up to be divided, and bonds were given for her support by them, that this contract could not affect the equity of Elizabeth Pool in the remainder, unless it was expressly stipulated at the time that it should have this effect, and to which stipulation Elizabeth Pool gave her consent.

6th. That if the jury should believe that it was the contract between Pool, Morris and Allen, that they should take the negroes and divide, and in consideration therefor, gave their bonds for the support of Nancy Allen, this arrangement did not affect the wife's equity. To destroy the wife's equity, it must be shown that it was expressly agreed that the fee in the property should be divided, and to this agreement, Elizabeth Pool gave her assent, and that in the absence of such assent, the law would imply that only the life estate was divided.

7th. That if the division was evidenced by writings, such as bonds or other contracts, that such contracts could not bind Elizabeth Pool, unless she joined in them and was a party thereto.

8th. That the admissions of Wiley Pool, made after 1828, are no evidence of the nature or terms of the division. The admission of Pool, that he had done an act which would destroy the wife's equity, cannot be evidence against the wife that the act was done; the act must be proved, not Pool's admission of the act.

9th. That if the jury should believe from the evidence,

that the division had reference only to the life estate, then the wife's equity is not destroyed.

10th. That if it be true from the facts in this case, that the life interest merged in the husband of the remaindermen, (notwithstanding the intervention of the wife's equity,) yet the merger can only affect the negroes in the possession of Pool, and cannot affect those in the possession of Morris and Allen, and which never came into the possession of Pool.

All of which the Court refused to charge, except the ninth request.   To which charge and refusal to charge, complainants except.

The jury found for the defendant.   Whereupon, counsel for complainants tender their bill of exceptions, and assign as error, the rulings, decisions, charges and refusals to charge above stated and excepted to.

CLARKE & LAMAR; and JNO. J. FLOYD, for plaintiffs in error.

PEEPLES & CABANISS, *contra.*

*By the Court.*—STEPHENS J. delivering the opinion.

[1.] We think the presiding Judge erred in admitting against Wiley Pool and his wife, the sayings of James and Nancy Allen, uttered at any time, except at the division of the negroes.   What they said at that time, or what any body else said then, was part of the *res gestæ,* and would be admissible as such.   But what they said either before or afterwards, is, as to Pool and wife, mere hearsay.   True, they were life-tenants, and Pool and wife were remainder in the same negroes, but they were not *privies* with Pool and wife, and therefore their admissions are not evidence against Pool and wife.   The rule is, that admissions are evidence against the parties who make them and their *privies.*   This evidence was admitted upon the idea that Pool and wife were privies

in estate to Allen and wife. Not so. A privy in estate is a successor to the *same estate*, not to a different estate in the same property. In this case, the *estate* of Allen and wife was during Mrs. Allen's life, and the *estate* of Pool and wife did not commence till the other was ended.

[2.] We think there was error also, in refusing to allow Pool to amend his bill, by striking his name as complainant and inserting it as defendant. The amendment Act of 1853 and 1854, is surely broad enough to include this case.

[3.] We think there was also error in the charge, that when Pool and Morris, the husbands of the two women entitled in remainder, and young Allen, the other remainderman, bought out the life estate of Nancy Allen, that life estate became *merged* in the remainder. Before a *merger* of one estate into another can take place, both estates must be owned, not only by the same person, but in the *same right*. Here Pool and Morris owned the life estate of Nancy Allen in their *own right*, for *they* bought it, but they owned the remainders of their wives in *right* of their *wives*.

But we consider both of the last mentioned errors to be very immaterial in the view we take of this case. The proposed amendment aimed to abandon Pool's claim for a new division of the negroes, and to rely solely on the wife's equity, while we think that in any one of the state of facts claimed as existing in this case, the wife's equity is gone, and the only case which the complainants can maintain is Pool's claim for the new division. Hence also, the question of *merger*, is immaterial, for it apples only to the wife's equity, which we think is effectually controlled by other principles. If there has been *no* division, the wife's equity is gone, for the life-tenant, Mrs. Allen, is confessedly dead, and all of the negroes were in the possession of Pool and Morris, a part in Pool's and a part in Morris's possession, before this bill was brought. But Pool and Morris, in right of their wives, are *joint* tenants of the remainder, and the possession of one joint tenant is the possession of all. The negroes in

possession of Pool after his *right* of possession had accrued in remainder, as it did immediately upon the death of the life-tenant, were in possession of *all* the joint tenants in remainder; and those in possession of Morris were in possession of all, that is to say, in possession of Pool. Pool then, was in possession of all the negroes, and the possession and *right* of possession, being united in the husband, his estate became perfect, exempt from the wife's equity. The union of possession and the right of possession in the husband, always bars the wife's equity. But again, suppose there was a division of the life estate only, as the complainants contend was the fact. Then the same consequence follows. When Mrs. Allen died, all the negroes were in possession of Pool, either in his own person or through his joint tenant Morris, and the *right* of possession to the remainder at that time, also fell to him, and the same union as before, taking place, the same consequence follows. Again, suppose the division included both life estate and remainder, as the defendant contends was the fact, and the same effect is produced on the wife's equity. In this case, Morris was not holding the negroes as joint tenant when Mrs. Allen died, but was holding as his own in severalty. But he was holding under a conveyance from Pool, for the division, if it included the remainder, amounted to a conveyance to Morris of Mrs. Pool's estate in those negroes which were assigned to Morris. It was a conveyance which *Pool* could never recall; it effectually carried *his* interest from the first. Then at the death of Mrs. Allen, Morris stood clothed with Pool's *right* of possession, and he had the actual possession in his own person. Again therefore, the possession and the right of possession were united in the same person; not in the husband, to be sure, but in one who derived his right from the husband. The *husband's act* united the two things in another person. This union, whether it takes place in his own person or in the person of another, is equally effectual to bar the wife's equity. This is obvious from a consideration of what that

equity is, and in what cases it can be asserted.   It is only in cases where the estate cannot be reduced to possession of the husband or his assignee, without the aid of a Court of Chancery.   When the husband or his assignee applies to the Court for the enforcement of his rights, the Court compels him to make an equitable settlement before it lends him its aid.   The jurisdiction has been extended, so that the wife herself may move in the matter, whether the husband moves or not; but she can get the remedy only in cases where the husband would be obliged to resort to the Court to enforce his rights, if they are resisted.   That is to say, she can never assert her equity in cases where the husband or his assignee already have the possession, and the right of possession, and where consequently there can be no possible occasion to resort to the Court in order to have anything further done. The death of the life-tenant was the time when the wife's equity was lost in each of these supposed cases.

[4.] The only remaining question is one on which the whole case turns.   We think it was error in the Judge to refuse to charge as requested by complainant, that the division which was made by Pool and Morris and young Allen, in the lifetime of Mrs. Allen, must be presumed to have included only the life estate which they had the power to divide with completeness and finality at that time, and not the remainder which they had no power so to divide before the death of Mrs. Allen.   The division was of course meant to be a *complete* one of *whatever* was divided, unless the contrary appears.   The life estate could have been completely divided at that time, nothing else being necessary to render it perfect, but the remainder could *not* have been so divided at that time, for *that* division could not be complete till the death of Mrs. Allen, since up to that event, either of the wives could have disturbed it, by asserting her equity. It is a rational presumption, that men *intend* to do that which they have a right and power to do, rather than what

is beyond their right or power.    This presumption must prevail till rebutted by affirmative contrary evidence.

These principles dispose of all the questions raised by the bill of exceptions.

Judgment reversed.