ANNA LANG

*v.*

WILLIAM METZGER.

*Opinion filed December 16, 1903—Rehearing denied February 3, 1904.*

1. PRACTICE—*opinion of Appellate Court is not binding where remand-ment is general.* Where a decree is reversed by the Appellate Court and the cause is remanded generally without specific directions, the lower court is not required to proceed according to the opinion of the Appellate Court, but may permit amendment of the plead-ings and hear the cause *de novo.*

2. PLEADING—*pleadings must correspond with proofs to warrant a decree.* If the evidence in a chancery case fails to sustain the case stated in the pleadings, the complainant is not entitled to a decree unless the pleadings are amended to conform to the proof.

3. EVIDENCE—*when record of judgment approving executor's report is not admissible.* The record of a judgment of the county court ap-proving an executor's report is not admissible in evidence against a stranger to the proceeding in order to charge him with notice of facts claimed to be shown by such report.

4. SAME—*declarations by a grantor not admissible to discredit the title he conveyed.* Declarations made after the defendant has joined in a trust deed conveying his interest in property are not admissible in evidence to impugn the title he has joined in making.

5. PRIVITY OF ESTATE—*when privity of estate does not exist.* Privity of estate does not exist between successive mortgagees, where their conveyances are distinct, based upon different considerations and running for different periods of time, and where the later mortgage includes more property than the earlier one.

6. TRUSTS—*when a cross-bill to establish a trust cannot be sustained.* A cross-bill in foreclosure which seeks to establish a trust in the property upon the ground that a former recorded trust deed upon the property made to evidence a loan of trust funds was fraudu-lently released cannot be sustained, where the evidence shows that such trust deed was a sham and that the maker thereof never re-ceived any loan of the trust fund nor any part thereof.

*Lang* v. *Metzger,* 101 Ill. App. 380, affirmed.

APPEAL from the Appellate Court for the First Dis-trict;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

Herman B. Wickersham, for appellant.

Edgar L. Masters, (Kickham Scanlan, of counsel,) for appellee.

Mr. Justice Ricks delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a decree of the circuit court of Cook county for a foreclosure and sale under a trust deed in favor of appellee. The trust deed in question was dated June 14, 1895, and was executed by Mary Pregler and her husband, Louis Pregler, and conveyed lots 3, 4, 5 and 6 in Gehrke's subdivision of part of lot 6, in Richon & Bauermeister's subdivision of the west half of the north-east quarter of section 25, township 40, north, range 13, east of the third principal meridian, in Cook county, to secure the payment of one principal note for $3000, due three years after date, and six interest notes, each for the sum of $90, payable semi-annually thereafter on the 14th days of December and June, all of said notes bearing interest at the rate of six per cent and all payable to the order of the makers and endorsed in blank, which trust deed was made to Charles Fleischer as trustee for the legal holder of said notes. The bill was filed the 13th day of September, 1897, and appellant and a number of other persons were made defendants thereto.

Appellant answered the bill and also filed her cross-bill, in both of which she set forth that on February 16, 1885, Josef Raback, her father, died testate, and that his will was duly admitted to probate on February 25, 1885, and letters testamentary issued to Louis Pregler; that in addition to making Louis Pregler executor the testator also constituted him trustee, and in and by which testament it was provided: "I hereby direct that all moneys belonging to me and collected by my executor are to be invested at the highest interest possible, upon good se-

curities; that if the interest upon such investments shall prove insufficient for the support and maintenance of my said wife, then she may use any of said capital for such support. Third, after the death of my said wife I hereby order and direct that any balance remaining of my said property or money shall go to my two adopted daughters, Anna Raback and Julia Raback, and their heirs forever, in equal parts;" that on December 9, 1887, Louis Pregler, having administered the estate under the direction of the probate court, presented his final account and report, showing that there remained in his hands $4500, and that the account was approved by the probate court and the said sum retained by said Pregler, as trustee; that on the 7th day of August, 1891, Louis Pregler, trustee, loaned to one Emily Lucand the $4500 so held by him in trust, taking her note for that sum, payable five years after its date, with seven per cent semi-annual interest, which loan was secured by a trust deed given by said Emily Lucand to the said Louis Pregler, trustee, on lots 3, 4 and 5, in block 1, Gehrke's subdivision, being the same property described in the trust deed to Fleischer, as trustee, securing the notes of appellee, except that appellee has, in addition, lot 6 of said subdivision; that said trust deed was duly recorded August 12, 1891, in the recorder's office of Cook county; that after the making of the trust deed to Fleischer, and the notes therein described, by Mary Pregler and Louis Pregler, Louis Pregler, the trustee, without the knowledge or consent of Magdalena Raback, the widow of Josef Raback and *cestui que trust* in the trust created by the will of said Josef Raback, on June 22, 1895, by his formal written release, released to Emily Lucand the deed of trust bearing date August 7, 1891, in which release it was recited that the note had been fully paid; that the release deed was given in fraud and in violation of the trust; that the payment to Louis Pregler, trustee under the will of Josef Raback, and the loan to Emily Lucand, the subsequent release

of the trust deed by Louis Pregler to Emily Lucand before the maturity of the note secured by said trust deed, are matters of public record, and that Mary Pregler and Charles Fleischer, trustee, and appellee, as the holder of said note secured by the trust deed of June 14, 1895, had full notice that the moneys loaned to Emily Lucand were trust funds in the hands of Louis Pregler, trustee under the will, and that they were bound, in law and in equity, to see that the trust deed made by Emily Lucand to Louis Pregler was not released or the lien acquired thereby until the moneys secured thereby were fully paid; that they were bound to see to the proper use, payment and application of the trust money; that at the time of the making of the release deed by Louis Pregler, as trustee, to Emily Lucand, dated June 22, 1895, no moneys passed from Emily Lucand, or anyone on her behalf, under the said will of said Josef Raback to Louis' Pregler, and that said release deed was given for the purpose of releasing the trust deed and was not a *bona fide* transaction, but was in fact a conspiracy to deprive appellant of the valid first lien acquired by the trust deed made by Emily Lucand; that the title to the real estate included in the trust deed made by Emily Lucand to Louis Pregler was, prior to the making of the Fleischer trust deed, through the procurement of Louis Pregler conveyed to Mary Pregler, the wife of Louis Pregler, and that the release deed executed by the latter to Emily Lucand and the trust deed executed to Charles H. Fleischer were made for the purpose of converting the funds in the hands of Louis Pregler to his own use and for the purpose of destroying the lien of the trust moneys on the real estate above described; that Emily Lucand was a sister-in-law of Louis Pregler; that Magdalena Raback, the widow of Josef Raback, died September 17, 1895, and that under the terms of the will of said Josef Raback appellant became entitled to one-half of the moneys in the hands of Louis Pregler, trustee under the will, and

that appellant, after the death of Josef Raback, married one Joseph Lang, and that her sister Julia married one Antone C. Pregler; that she applied, on September 22, 1895, to Pregler, as trustee, for an accounting of the trust moneys and the payment to her of the amount due her, but that said Pregler refused to account, and insisted that she take in satisfaction of her claim a note for $2250, secured by a second trust deed upon this same property, made by one John Tanier, to whom the property was conveyed by Mary Pregler; that the premises conveyed in the trust deed are scant security for the $2250; that after the property had been conveyed to Tanier, (which conveyance she alleges was for the sole purpose of enabling him to execute certain trust deeds set out in the bill, among which is one securing the $2250 note which was accepted or taken by her,) said Tanier re-conveyed the property to said Mary Pregler; that she is entitled to $2250, with interest from August 7, 1895; that she is unable to find the notes made by Emily Lucand, and by the trust deed it is provided that if default be made in the payment, they may be foreclosed; alleges default in the payment by Emily Lucand; makes William Metzger, Charles H. Fleischer and the defendants to the original bill defendants to the cross-bill; asks for the appointment of a successor to Louis Pregler, trustee under the will of Josef Raback, to collect $4500 and interest and pay it over to her; prays that the deed made by Emily Lucand to Mary Pregler, and the conveyance by Mary Pregler and husband to Bauerle, and the re-conveyance from Bauerle to Mary Pregler, and the conveyance by Mary Pregler to John Tanier, and the trust deed made by Tanier to Louis Pregler as trustee, and the conveyance by Tanier to Mary Pregler, and each of them, be set aside; that the trust deed made by Emily Lucand to Louis Pregler, trustee, dated August 7, 1891, be revived and established as a first lien upon lots 3, 4 and 5, in block 1, above described; that a receiver be appointed

and that an accounting be had of the amount due, and that Mary Pregler, individually and as executrix, be decreed to pay to oratrix whatever sum shall be equitably due on the notes dated August 7, 1891, with interest and costs, and that in default thereof the premises be sold.

To this cross-bill answers were filed by appellee and Charles H. Fleischer, the trustee, and others made defendants thereto, denying all the allegations of the bill in so far as they charge either actual or constructive fraud or knowledge of fraud on the part of Louis Pregler, and denying all knowledge of the relation of Louis Pregler to the estate of Josef Raback or to the trust fund in question, and denying all acts of fraud or any knowledge of fraudulent acts on their part, and denying plaintiff in the cross-bill is entitled to the relief prayed.

The cause was referred to the master, and evidence was taken and report made. A decree was entered November 12, 1898, decreeing sale under the original bill, under the trust deed made to Charles H. Fleischer, and dismissing the cross-bill of appellant. From this decree an appeal was prosecuted to the Appellate Court for the First District, which court reversed and remanded the cause generally. The cause was re-docketed in the circuit court of Cook county and re-referred to the same master, who took further evidence and made his report. Objections were filed to the report, and, on argument, overruled by the chancellor, and the decree now appealed from was entered, directing a sale under the Fleischer trust deed and dismissing the cross-bill of appellant.

It will be necessary for a proper understanding of this case to go to some extent into the evidence relating to some of the material features of it. The evidence shows that Josef Raback died February 16, 1885, and that his will was probated, as set forth in the bill; that Louis Pregler was appointed both executor and trustee under the will, and qualified and took upon himself the discharge of the duties imposed thereby; that he made his

final report as executor December 9, 1887. Quoting from the final order of the court approving his report, the following is shown: "And thereupon the said executor presented to the court his final account with the estate of said decedent, showing receipts amounting to $6161, and disbursements, including the amount paid for certain notes and credits, amounting to $6153.95, leaving a cash balance due said estate amounting to $7.05, which balance, together with the two Anderson credits, amounting to $2500, and the Wilkaryorz credits, amounting to $2000, has been retained by said executor as trustee under the will of said decedent." It thus appears from the only evidence upon that subject, that at the time Louis Pregler made his settlement with the court of the estate of Josef Raback he had but $7.05 in money, but he did have securities called the Anderson notes, amounting to $2500, and the Wilkaryorz notes, amounting to $2000, with the interest coupons belonging to the same, which credits he had purchased prior to the settlement of the estate with the funds belonging thereto, and which he held after his settlement as executor, under the authority in the will given him as trustee. The record is barren of any evidence that these notes were ever paid by the makers thereof or were ever converted into money by Louis Pregler, except what may be inferred from certain letters written to Magdalena Pregler and admissions made by Louis Pregler to appellant. These matters will be referred to later, in the consideration of the evidence.

The history of the supposed loan to Emily Lucand of this alleged trust fund is another matter that needs to be specially stated. As has been said, Emily Lucand was the sister of Mary Pregler, wife of Louis Pregler. Louis Pregler was the treasurer and manager of a certain coal company doing business in Chicago, and Emily Lucand was his book-keeper, stenographer and janitor in the coal office. She had no money, did no business except that as servant and clerk for Louis Pregler and

206—31

was possessed of no property. It appears that Gehrke's subdivision of lot 1, of which the real estate mentioned in the several mortgages and deeds in dispute in this case is a part, when laid out was under the control of a syndicate composed of Vernon C. Gehrke, Louis Pregler and Joseph Roetter; that the title to the property seems to have remained in the Gehrkes, although Pregler and Roetter were to have, or did have, some interest, the extent of which is not shown by the evidence. This syndicate, or Gehrke for it, had borrowed upon each of the lots $270, and had secured the payment of the sums so borrowed by a trust deed. On August 3, 1891, Ferdinand C. Gehrke and wife, by their deed, conveyed to the said Emily Lucand lots 3, 4 and 5 in said block 1, subject to the trust deed securing the $270 borrowed on each lot prior thereto. This deed was recorded August 11, 1891, and on August 7, 1891, Emily Lucand executed one principal note for $4500, due five years after date, and ten interest notes, each for the sum of $157.50, due February 7 and August 7, respectively, for the years said principal note was to run, and being the semi-annual interest thereon, all of said notes being payable to the order of Louis Pregler, trustee, and she executed, to secure the same, a trust deed to Louis Pregler, as trustee, on said lots 3, 4 and 5 of said block 1. This trust deed was duly recorded August 12, 1891, and on October 1, 1891, Emily Lucand conveyed the same real estate contained in the trust deed to Louis Pregler, by quit-claim deed to Mary Pregler and Louis Pregler, her husband. Mary Pregler and Louis Pregler on the third of October conveyed the same premises, together with lots 2 and 6, in the same block 1, to Michael Bauerle, and Michael Bauerle and wife, by warranty deed, on February 15, 1894, conveyed lots 3, 4, 5 and 6, in said block 1, back to Mary Pregler. All of these deeds were duly recorded, and the title so remained in Mary Pregler until the $3000 loan was made by Fleischer, Weinhardt & Co., mortgage brokers. This

loan was requested by Louis Pregler and arranged for with the above brokers, and as appellee, Metzger, was one of their customers, they arranged that he should take this loan when it was completed. When the loan was arranged for and the title was examined, one Ludmil Kandlik, a member of the above brokerage firm and an attorney at law, examined the title and submitted a written report of his conclusions to appellee, Metzger, in which he stated the title to be in fee in Mary Pregler, subject to, first, the trust deed executed by Gehrke June 20, 1891, securing the $270 on each of said lots; second, the trust deed by Emily Lucand to Louis Pregler, dated August 7, 1891, given to secure her note for $4500, payable to the order of Louis Pregler, trustee, in five years, with interest at seven per cent per annum. The brokerage firm continued to manage the matter until Louis Pregler brought to that firm the notes purporting to be executed by Emily Lucand, all of which were marked paid, and stated that he had paid these notes for his wife, the then owner in fee, and was seeking the loan to partially reimburse himself for that payment, and on June 22, 1895, said Louis Pregler executed a formal deed of release of the Emily Lucand trust·deed, which was placed of record. It also appears from the evidence that at the time that Louis Pregler formed a part of the syndicate for the development and sale of the Gehrke subdivision he put no money in the scheme, but, as near as the evidence shows anything about it, was to have whatever interest or benefit he was to derive from it for his services in carrying out the scheme. It also appeared when Emily Lucand was put upon the stand, that she never paid anything for the property that was conveyed to her by Gehrke and had nothing to do with having it conveyed to her; that she never borrowed any money of Louis Pregler, but that she was a mere figurehead, accepting such conveyances as he saw fit to make to her and signing any and all papers placed before her by him,

and the evidence conclusively shows that at the time she executed the $4500 trust deed and notes she received nothing for the same, and was never, at any time, by virtue of such notes, possessed of any part of the supposed trust fund held by Louis Pregler as trustee of Josef Raback's estate. The evidence further shows that Louis Pregler never paid to Magdalena Raback, or any of the beneficiaries, any income or any of the proceeds of his trust until November 2, 1891. (It will be recalled that he was discharged as executor December 9, 1887.) This payment that was made was enclosed in a letter,· which was as follows:

"CHICAGO, *November 2, 1891.*
*"Mrs. Magdalena Raback, 104 Bunker St., City:*

"MADAM—Enclosed please find check for $106.92, which is for collections of interest on trust deed of Joseph Brandt $81.25; int. for 2 mo. 11 days, at $6\frac{1}{2}$ per cent, from Steinbrecher, from Aug. 1 to Nov. 1, $25.67, $106.92. I had a chance to place the whole amount at 7%, which is the highest interest paid under the laws of the State of Illinois, and I have placed the same, and hereafter you will receive on the first day of May and November of each year the sum of $157.50 interest. Hoping this will be satisfactory, I remain, respectfully,

LOUIS PREGLER."

The next letter was of date May 4, 1892, and enclosed a check for $157.50, "interest on your investment which I have collected." The next was November 3, 1892, which stated: "Enclosed will please find check for $157.50, interest collected for past six months." Next was January 27, 1893, which said: "Your money is loaned out on the highest rate of interest that the laws of the State of Illinois will allow, which is seven per cent, making $157.50, payable every six months, which amount you have received." Next was February 7, 1894, which said: "I am sorry to state that the party holding your mortgage will not be able to pay same before the 15th of this month, at which time I shall send you check for amount of interest note." On February 21 it was written: "Enclosed please find check for $157.50, in payment of your fifth in-

terest note.  I have not received the money from party
holding the trust deed, as they asked me to wait until
the first of next month on account of hard times, but as
I know it will be all right I have advanced it to you."
August 7, 1894, it was written: "Enclosed find a check
for your sixth interest note, amounting to $157.50." And
February 13, 1895: "Enclosed will please find $157.50, for
interest note of this month.  You would have received
it much sooner, but the party was a little behind in his
payment."  These letters were all objected to by appel-
lee as being hearsay evidence.

It is apparent from the first letter above quoted, if
the letters are to be considered at all, that at the time
it was written Louis Pregler had certain credits, known
as the Joseph Brandt trust deed and the Steinbrecher
credits, and the time of the payment of interest "on the
first day of May and November of each year" is entirely
different from that provided by the Lucand notes, and
while the subsequent letters give dates, some that agree
with the supposed interest that was payable on the Lu-
cand loan, none, except the last two, agree with the loan
as to time of payment, and the party to whom the loan
is made is throughout all of them talked of in a sort
of mysterious way, sometimes with no gender as to the
party, other times as "they," and in the last letter the
borrower is referred to as "his."  It would seem to follow
from the evidence establishing the fact that Emily Lu-
cand received nothing upon this loan, that whatever may
have been the condition of the funds as held by Pregler,
whether they had been appropriated before that time
to his own use and he was merely paying to keep up ap-
pearances, it is quite clear that as late as November, 1891,
he pretended to have securities of other persons than of
Emily Lucand.  The evidence incontestably shows that
all these payments of interest that were made were by
Louis Pregler himself.  Emily Lucand never paid any-
thing, and when, after his death, the notes given by her

were found among his papers and were produced on the trial of this case, the original note and all the coupons were together in one sheet, as originally executed, but all marked "paid." When appellee paid the money and took the securities which he is now seeking to foreclose, $1150.65 of the $3000 was paid upon the notes given by Gehrke and secured by trust deed on the loans in controversy, before Emily Lucand ever had any paper title to any part of them, and before the supposed loan of the trust funds by Louis Pregler to her; the balance of the $3000 was paid to Louis Pregler for his wife, upon her written order.

Appellant argues that all matters except two questions of fact, namely, first, whether Emily Lucand ever paid her note, and second, whether Louis Pregler left a solvent estate, are *res judicata* by the former decision of the Appellate Court in the first appeal in this cause, and that as it is shown by the evidence that Emily Lucand did not pay the note signed by her prior to the deed of release, or at all, and that as it also appears from the evidence that the estate of Louis Pregler was insolvent, it therefore follows that the decree should have been in favor of appellant. This contention grows out of a misapprehension on the part of appellant as to what constitutes a judgment. The difference between the opinion of the Appellate Court and the judgment of that court is marked and well understood, as we think, by the bench and bar. On the first appeal in the Appellate Court the decree was reversed and the cause remanded generally. In the opinion of the court, however, the following language is used: "Upon another trial of this cause it may be more satisfactorily determined whether Mrs. Lucand had ever paid any portion of the debt evidenced by her note to the trustee, and there may also be a finding of fact as to the estate left by the trustee, Pregler, at his decease. Upon the evidence as now presented the decree cannot be sustained." These remarks of the court, found

in its opinion, were no part of its judgment. When the decree was reversed and the cause remanded generally, without any specific directions to the lower court, that court was not required to proceed according to the opinion of the Appellate Court, but it had authority to permit a change in the pleadings and to hear the cause *de novo*. (*Chickering* v. *Failes*, 29 Ill. 294; *Parker* v. *Shannon*, 121 id. 452; *Perry* v. *Burton*, 126 id. 599; *Cable* v. *Ellis*, 120 id. 136; *West* v. *Douglas*, 145 id. 164; *Rush* v. *Rush*, 170 id. 623.) It is true that the master did find that Emily Lucand did not pay the notes secured by the trust deed appearing of record, to Louis Pregler, and which existed at the time appellee made the loan for which he seeks foreclosure, and it is also true that the reason she did not pay the loan was that she never received any loan. In fact, there was never such a loan made. The papers purporting to evidence such loan were a sham and Emily Lucand but a figurehead in the transaction, so that appellant's cross-bill, so far as the rights under it rested upon the charge that the trust funds held by Louis Pregler had been loaned to Emily Lucand, and the trust deed appearing of record from Emily Lucand to Louis Pregler, the trustee, was given to secure such loan, and that such trust deed was fraudulently released by the trustee without the re-payment of the loan, necessarily failed under the evidence.

It is contended, however, by appellant, that though it may be held under this evidence that Louis Pregler had converted trust funds to his own use, yet that it is the law that where a trustee diverts or converts a trust fund to his own use he may restore that fund by purchasing real estate with other moneys of his own, or by setting apart the proper amount of his own funds to take the place of the trust fund. In support of this contention section 828 of Perry on Trusts (4th ed.) is cited, which may be said to fairly support the view contended for. With reference to this contention it may be said,

first, that there is no such allegation in appellant's cross-bill, nor is there any allegation that can be said to cover any such supposed state of facts. It is a fundamental rule of equity pleading that the allegations of a bill, the proof and the decree must correspond, and that the decree cannot give relief that facts disclosed by the evidence would warrant where there are no averments in the bill to which the evidence can apply, and that if the evidence disproves the case made by the bill the complainant cannot be given a decree upon other grounds disclosed by the proofs, unless the court permits the complainant to amend his bill so as to present the case disclosed by the evidence. (*McKay* v. *Bissett*, 5 Gilm. 499; *Morgan* v. *Smith*, 11 Ill. 194; *Bremer* v. *Canal Co.* 123 id. 104; *White* v. *Morrison*, 11 id. 361; *Rowan* v. *Bowles*, 21 id. 16; *Russell* v. *Conners*, 140 id. 660; *Reed* v. *Reed*, 135 id. 482; *Dorn* v. *Geuder*, 171 id. 362.) This rule is not only based upon necessity, but upon the soundest reasons of equity. The requirement for written pleadings is that the defendant shall know the particular matter he is to answer and that the complainant shall know the particular answer made to the complaint. To allow a complainant in his bill to state one cause of action and obtain a decree upon another cause of action not stated in his bill, by merely making proof supporting such decree, would work great injustice. There is no allegation in appellant's cross-bill that would support the contention now made, and there was no request to amend the bill to correspond to any such supposed state of the evidence.

It may be further said, secondly, that this contention was made before the master, the chancellor on exceptions, and argued in the Appellate Court, and each of them in turn has found that there is not sufficient evidence to support such contention. The most that is contended for, or can be, in so far as appellee's relation to the trust fund is concerned, is, that he now seeks to foreclose a trust deed upon property a part of which was

included in a trust deed which, by the admissions and declarations of Louis .Pregler, was given to secure the trust fund. The existence of the trust fund was sought to be established by, first, the introduction of the record of the probate court approving the final report of Louis Pregler as executor of the estate of Josef Raback, and second, by the admissions and declarations of Louis Pregler as to the whereabouts of the trust fund. All this evidence was admitted over objections of appellee. Appellee was a stranger to the proceedings in the county court, upon the final report of Louis Pregler as executor, and the record of the judgment of that court approving his report was *res inter alios acta,* and was not admissible as to him. (1 Greenleaf on Evidence, sec. 538.)

In addition to the letters set out above, appellant was permitted to testify that one letter was written to Magdalena Raback, the *cestui que trust* for the debt of the Lucand trust deed, in which the particular property bought by Pregler and standing as security for the trust fund was pointed out, and appellant testified that lots 3, 4 and 5 (part of the lots in controversy) were the ones mentioned in that letter. This evidence was admitted over objections of appellee. Appellant also testified that on the day of the burial of Magdalena Raback, which was after the making of the trust deed to appellee, Louis Pregler took appellant to the property now in controversy and told her that that property was the security for the fund. This was also objected to by appellee. As to this latter evidence, it was clearly incompetent. Whatever interest Louis Pregler had in the real estate now in controversy he had parted with before that admission or declaration by joining in the trust deed made by his wife to Fleischer, as trustee for appellee, and he could not then be heard to admit or declare anything to impugn the title that he had joined in making.

As to the admissibility of the letters, and the evidence as to the lost letter, the question is more difficult.

Appellant contends that all of such evidence was admissible upon the theory of privity of estate between Louis Pregler and appellee. Appellee, on the other hand, contends that as to all such admissions he was a stranger, and that they should not be considered by the court. It is sometimes most difficult to determine, as a matter of law, when the relation of privity in estate exists. Mr. Greenleaf, in his work on Evidence, (vol. 1, sec. 180,) says: "The term 'privity' denotes mutual or successive relationship to the same rights of property." We think it cannot be said, as a matter of law, that because Louis Pregler held a mortgage for $4500 on a part of the property in question, and appellee afterwards took a mortgage upon all the property for $3000, such a relation as privity in estate arose from that transaction. In a sense, their relation was successive and similar, but each was independent of the other. Another definition of this relation, as found in the books, is: "A privy in estate is a successor to the same estate,—not to a different estate in the same property." (23 Am. & Eng. Ency. of Law,—2d ed.—102; *Pool* v. *Morris*, 29 Ga. 374.) Under this last announcement of the rule it would seem clear that there is no privity between appellee and Louis Pregler growing out of the trust deeds. They were not successors to the same estate. Their conveyances were entirely different and distinct, based upon different considerations, subject to different conditions and running for different periods of time. But Louis Pregler became a principal maker of both of the notes and trust deed held by appellee, and at the time of the execution of appellee's trust deed Louis Pregler had an inchoate right of dower in the premises, and, the evidence tends to show, had a homestead right, as the premises seem to have been occupied by him and his family as their home. Under such circumstances we are disposed to hold that the declarations and admissions made by Louis Pregler prior to the time of the conveyance to appellee were ad-

missible. But when they are admitted they cannot avail
appellant. The theory upon which they are admissible
and have any bearing upon the case is, that they tend to
show that Louis Pregler invested the trust fund in the
property in controversy, but when it appears, as it does
quite conclusively, that he did not invest any part of the
trust fund in this property, or anything that it repre-
sents, then the conclusion must follow that the declara-
tions, if made by Pregler, were false and for the purpose
of covering up his misappropriation of the trust fund.
As was found by the master, there is no legitimate evi-
dence in this case to show that Louis Pregler ever had
$4500 which he held as trustee, and if he did, it is quite
clear that it was converted to his own use.

The supposed restoration of property rests wholly
upon the theory that Louis Pregler bought lots 3, 4 and 5
of the property in controversy and held it by the trust
deed, or in some indefinite matter, as representing the
fund which he held in trust. It is quite clear that he
never paid anything for the property, and it is also
shown by the record that the title was never solely in
him at any time, except such title as was made by the
fraudulent and false Lucand trust deed. Instead of tak-
ing the title to himself, as an individual or as trustee,
he caused it to be conveyed to Emily Lucand, and, after
the execution of the notes and trust deed by her, caused
a quit-claim deed to be made to himself and wife, and
then immediately proceeded to convey the property to
other persons, so that the same might come back and
rest finally in the name of his wife. The restoration of a
trust fund usually arises in cases where the trustee com-
mingles the trust fund with his own funds in such a man-
ner that the identity of the trust fund is lost, and the
trustee, still desiring to protect the beneficiaries under
the trust, sets apart, out of his own funds or the com-
mingled funds, or the proceeds of the trust fund, in some
form, certain property which he dedicates or appropri-

ates to the particular trust uses.  (Perry on Trusts,—
4th ed.—sec. 828.)   If the bill in this case was sufficient
to support a decree upon the theory of restoration, we
would be unable to find facts to warrant such a decree.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*