# Mary Angeline Mathias et al., Defendants in Error, v. Joseph A. Miller, Plaintiff in Error.

1. EVIDENCE—*when declarations of grantor incompetent.* Declarations of a grantor in a mortgage made after its execution unless part of the *res gestae* are incompetent as against one claiming under such mortgage.

2. JUDGMENTS—*when not subject to collateral attack.* A judgment, the satisfaction of which constituted a part of the consideration of a mortgage, is not subject to attack in a proceeding which seeks the cancellation of such mortgage.

3. MASTERS IN CHANCERY—*effect given to findings of fact.* While findings of fact by the master are merely advisory to the chancellor they are entitled to due weight in consequence of the superior opportunities afforded the master to determine the credibility of the witnesses by having seen them and having observed their demeanor while testifying.

4. FRAUD—*how must be established.* Fraud is not presumed but must be proven.

5. FRAUD—*effect of acknowledgment as affecting fraud in execution.* An acknowledgment to an instrument attacked as having been obtained by fraud is not to be lightly regarded.

Bill in equity. Error to the Circuit Court of Moultrie county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the November term, 1910. Reversed and remanded with directions. Opinion filed October 20, 1911.

E. C. CRAIG and W. K. WHITFIELD, for plaintiff in error.

R. M. PEADRO and MILES A. MATTOX, for defendants in error.

*Per Curiam:* On August 14, 1907, one Casander E. Berry filed her bill in equity in the circuit court of Moultrie county, wherein she alleged that she was eighty years of age and was unable, by reason of her lack of education, to read or write; that owing to her lack of education and business qualifications she was compelled to rely and had for many years relied implicitly upon the statements made to her by those with whom she did business; that for a number of years she had been the sole owner of a certain described forty acre tract of land in Moultrie county, and that she was possessed of but little, if any, other property or means of support; that she was and had been for many years well acquainted with the defendant, Joseph A. Miller, who had resided all his life in the immediate vicinity of her farm; that not withstanding she was not and never had been indebted to said defendant in any sum of money whatever, he, on May 9, 1907, in company with one C. Enterline, a justice of the peace, came to her residence, and then and there had with him certain papers purporting to be a mortgage and note, which papers were presented to her by him with the request that she sign the same, he then and there stating to her that her son, Evan Berry, had said the papers were all right; that she then and there without knowledge of the contents of said papers and without having the same read over to her by the defendant or

by any other person, affixed her mark thereto; that immediately thereafter the defendant left her residence taking said papers with him; that she afterwards learned, and so states the fact to be, that one of said papers was filed for record in the recorder's office of Moultrie county, which record discloses that said two papers were a mortgage upon the said forty acre tract of land and a note for $3500, executed by her to said defendant; that the said note and the mortgage purporting to secure the same are and were without any consideration whatever; that she relied implicitly upon the statements made to her by the defendant, which statements were false and untrue and known by him to be such, and were used by him for the purpose of obtaining her signature to said papers; that at the time of signing the said note and mortgage, she, owing to her lack of education, her extreme old age, want of business ability and lack of judgment, was unfit and unable to transact business, as defendant then well knew; that the said tract of land is her homestead and is worth but very little over and above the amount of said note and mortgage; that the defendant still has possession of said note and mortgage and ought in equity and good conscience to be required to surrender the same for cancellation. The bill prays for the surrender by the defendant of said note and mortgage and for the satisfaction and cancellation of the record of said mortgage, and for general relief. The defendant answered the bill denying all of its material allegations, and complainant filed her general replication to such answer. On March 4, 1908, the death of the complainant Casander E. Berry was suggested and the bill was amended by substituting Angeline Mathias and Sarah Jane Webb as complainants, and further alleging that said Casander E. Berry died testate January 27, 1908, and that by her last will and testament which was duly admitted to probate February 28, 1908, said testatrix devised the forty acre tract

of land described in the bill and mortgage, to said Angeline Mathias and Sarah Jane Webb.    The answer of the defendant to the original bill was permitted to stand as his answer to the amended bill, and the cause was referred to the master to take the proofs and report the same together with his conclusions of law and fact.

The facts were found by the master to be substantially as follows: That on November 1, 1895, Casander E. Berry executed two certain mortgages upon the premises in question, one to secure the payment of a note for $500, executed by herself and her son William E. Berry, payable to Maria Johnson in five years after date, and one to secure ten notes for $2.50 each, as commission notes, payable every six months; that on November 5, 1900, upon the maturity of said notes and for the purpose of liquidating the same the said Casander E. and William E. Berry borrowed of Salathiel Miller $675, and to secure the payment of a note for that amount, due five years after date, they executed their mortgage on the same premises, and thereupon the two prior mortgages were released; that thereafter in 1905, the said Casander E. and William E. Berry having become further indebted to said Miller, for which indebtedness the said Miller held their judgment note, upon which note judgment was entered aginst them by confession, they executed to said Miller in satisfaction of such judgment and in liquidation of their note for $675, their note for $1025 bearing date December 7, 1905, payable five years after date, and to secure the payment of said note they executed a mortgage on the same premises, and that thereupon the said judgment and the prior mortgage for $675 were satisfied and released; that thereafter said William E. Berry executed his several promissory notes, each of which was signed by the said Miller as surety, as follows: One on December 19, 1905, for $315 to

one Purvis; one on March 10, 1906, to one Birch for $335; one on April 28, 1906, to one McDonald for $100; one on November 20, 1906, to the First National Bank of Sullivan for $319.21.    The master further found that on March 14, 1906, the said William E. Berry executed and delivered to said Miller a chattel mortgage on certain personal property to secure the said Miller for his having become surety on the note for $335, payable to one Birch, which said mortgaged property was afterwards sold by said Miller and the proceeds of said sale amounting to $277 were credited on said note; that thereafter one Samuel T. Miller purchased each of said notes and caused judgment to be entered thereon against William E. Berry by confession for $922.93 and $4.50 costs; that on February 5, 1906, the said William E. Berry became indebted to one McDonald in the sum of $800, which indebtedness was evidenced by a promissory note executed by William E. and Casander E. Berry and Salathiel Miller and which note was thereafter purchased by said Samuel T. Miller, who obtained judgment by confession thereon against said William E. and Casander E. Berry for $875.34 and $4.50 costs; that to secure the said Salathiel Miller for having become surety on the said note for $800 payable to one McDonald, the said William E. Berry executed and delivered to said Miller a chattel mortgage on certain personal property; that said mortgage was thereafter foreclosed by a sale of the property, which sale realized $537.50 and which amount should have been applied as a credit upon said note for $800; that in 1906 the said William E. Berry sold a quantity of broom corn to one Duncan for $1401.48, out of which amount Duncan deducted $200 due himself upon a note signed by said Berry, and of the balance remaining paid $377.50 to Salathiel Miller and $823.98 to said Berry, and that said settlement did not enter into the accounting or settlement between

Joseph A. Miller and Casander E. Berry involved in the note and mortgage for $3500 in question in this proceeding. The master further found that on May 9, 1907, Casander E. and William E. Berry were indebted to Salathiel Miller, who had previously departed this life, in several amounts represented by certain notes, mortgages and judgments, and that Joseph A. Miller, a son of the said Salathiel Miller, then had a settlement with the said Casander E. and William E. Berry whereby the said Casander E. Berry gave to the said Joseph A. Miller her note for the sum of $3,500 payable five years after date with interest at 5 per cent per annum from date, payable at the end of five years from date, and also then gave to said Joseph A. Miller a mortgage upon the real estate described in said bill to secure said note; that the consideration for said note and mortgage was as follows: A check for $362 given by said Miller to one Chase in payment for a bill for lumber purchased by William E. Berry; a check for $300 given by said Miller to said William E. Berry; the release of the mortgage for $1,025 given by Casander E. Berry to Salathiel Miller; the satisfaction of the judgment against William E. Berry for $927.43, and the satisfaction of the judgment against Casander E. and William E. Berry for $880.84. The master further found that at the time the said settlement was had and the said note and mortgage for $3,500 was given by Casander E. Berry to Joseph A. Miller the said Joseph A. Miller was the owner of the said note and mortgage for $1,025 and of the said judgments against Casander E. and William E. Berry; that the said judgment for $880.34 should be credited with the sum of $537.50, which amount was realized by Salathiel Miller from the sale under foreclosure of the chattel mortgage which was given by said William E. Berry to secure said Salathiel Miller for having become surety on the note for $800 to one McDonald. The master further found that the

complainants were not entitled to the relief prayed in their bill and were not entitled to have the said note and mortgage for $3500 set aside and declared null and void; that no fraud or deceit was practiced by any one or any advantage taken of Casander E. Berry in procuring her to execute the note and mortgage for the $3500 in question; that except as to said sum of $537.50 before mentioned, the said mortgage for $3500 should stand as a valid lien against the real estate described therein.

To this report of the master the complainants filed their objections which objections were overruled, and thereupon the cause was heard by the chancellor upon such objections standing as exceptions to said report, and a decree entered sustaining such exceptions and granting the relief prayed in the bill except as to the sum of $1025 which amount together with interest thereon at 5 per cent from May 9, 1907, the complainants were required to pay to the defendant or to the clerk of the court for him, within 60 days from the filing of said decree, and which payment when so made was ordered should constitute a full and complete satisfaction of said note and mortgage for $3500. Upon the refusal of the defendant to accept such payment the complainants paid to the clerk of the court within the time limited $1181.20 in full satisfaction of said decree. The defendant prosecutes this writ of error to reverse said decree.

The facts as found by the chancellor and upon which findings the relief granted was necessarily predicated are specifically recited in the decree substantially as follows: That at the time of the execution of the mortgage in question, Casander E. Berry was an aged woman incompetent and unable to understand business matters or to read and write, and had to rely upon the fairness and honesty of the persons with whom she did business; that the said mortgage was signed at her home and was acknowledged before C. Enterline, a

justice of the peace; that at the time she executed said mortgage she had no knowledge of the contents thereof; that the same was not read over to her and she was incorrectly informed as to the contents of the papers she was then executing; that the entire transaction relating to said note and mortgage was a premeditated scheme designed to obtain from Casander E. Berry without her knowledge a lien upon her property for the debts of her son William E. Berry; that it was not pretended that said Casander E. Berry ever heard of said mortgage or ever agreed to execute it prior to the time her name was affixed thereto.

As defendants in error were suing in the capacity of devisees under the will of Casander E. Berry of the land described in the mortgage in question, it is conceded that plaintiff in error was incompetent to testify to any conversations or transactions had with the said Casander E. Berry in her lifetime, and as the witness Samuel T. Miller according to his own testimony was directly interested in the event of the suit as one of the heirs at law of Salathiel Miller, deceased, he was also incompetent to testify to the like conversations and transactions. The declarations of Casander E. Berry, not a part of the *res gestae,* made subsequent to the execution by her of the mortgage in question, were inadmissible as against plaintiff in error. Brower v. Callender, 105 Ill. 88; Williams v. Evans, 154 Ill. 98; Lang v. Metzger, 206 Ill. 475.

The uncontradicted competent evidence in the record sustains in the main the findings of fact recited in the master's report, heretofore set forth, in so far as such findings relate to the character and amount of the several transactions wherein Casander E. Berry, William E. Berry, Salathiel Miller and Samuel T. Miller were involved. Such evidence further discloses that in the afternoon of May 9, 1907, plaintiff in error and C. Enterline, a justice of the peace, following a conversa-

tion with William E. Berry, who was then in the city
of Sullivan, left Sullivan with a horse and buggy and
drove to the residence of Casander E. Berry, a short
distance in the country, for the purpose of securing her
signature to the note and mortgage in question, and
taking her acknowledgment to said mortgage; that the
note and mortgage were fully written up before the
parties left Sullivan; that upon their arrival at the
residence of Mrs. Berry they found her at home with
her young grandchild; that Mrs. Berry was then about
80 years of age, feeble in appearance and unable to
read or write; that plaintiff in error and Enterline in-
formed Mrs. Berry that they had come for the purpose
of securing her signature to the note and mortgage,
whereupon she informed them that she could not read
or write; that Enterline then read the note and mort-
gage in the presence and hearing of Mrs. Berry, and
plaintiff in error left the house for the purpose of
procuring two witnesses to her signature by mark; that
plaintiff in error informed Jesse Sullivan and Sibba
Ann Sullivan, his wife, near neighbors of Mrs. Berry,
that he desired them to go to her house and witness her
signature to a mortgage or note and mortgage; that
Mrs. Sullivan responded immediately to the request of
plaintiff in error and shortly thereafter Mr. Sullivan
accompanied by plaintiff in error arrived at the house
of Mrs. Berry; that about the same time there came
to the house of Mrs. Berry her grandson, Sheridan
Mathias, and his wife; that while all the parties named
were in the same room in the house of Mrs. Berry the
note and mortgage in question were upon a table or
dresser in the room; that in the presence of all the
parties there present Enterline, the justice of the
peace, wrote the name of Mrs. Berry on the note and
mortgage and Mrs. Berry affixed her mark thereto
and Mr. and Mrs. Sullivan signed the same as wit-
nesses.

Jesse Sullivan testified that Mrs. Berry came over to

the table upon which the papers were placed; that neither the note nor mortgage was read during the time he was there and no statement was made there in his presence as to what the papers were; that he looked at the papers but did not examine them to note their contents; that he did not notice the amount of the note although it was laid out before him so that he had an opportunity to see it if he had wanted to; that he looked at the top of the mortgage and saw it was a mortgage; that he saw nothing there to indicate that there was any inclination to conceal anything from him; that plaintiff in error and Enterline remained at the house twenty or thirty minutes after the note and mortgage was signed, but no further reference was made to the transaction.    Sullivan further testified that when plaintiff in error requested him to go to the house of Mrs. Berry he said he wanted him (Sullivan) to witness a $500 mortgage. This statement was contradicted by plaintiff in error.

Sibba Ann Sullivan testified to substantially the same state of facts, and further that Mrs. Berry told her immediately after the witness arrived at her house that she was going to get some money from plaintiff in error without interest to enable her son to buy another team.    Sheridan Mathias testified to substantially the same facts as did the witnesses Jesse and Sibba Ann Sullivan.

No witness testified that Casander E. Berry was incapable of understanding and transacting ordinary business, and the only evidence bearing upon that issue arises out of the facts and circumstances heretofore detailed.    The record discloses that shortly prior to the transactions in question executions had been issued upon the judgments against Casander E. and William E. Berry and it is doubtless true that William E. Berry had persuaded and influenced his mother to satisfy the insistent demands of their creditors for a

settlement by giving the note and mortgage in question.

Defendants in error have sought in this proceeding to attack the judgments against Casander E. and William E. Berry, the satisfaction of which constituted a consideration, in part, for the note and mortgage in question, but it is clear that such judgments are not subject to be attacked collaterally. Aside from the release of the mortgage for $1,025 and the satisfaction of the judgments heretofore mentioned, plaintiff in error at the request of Casander E. Berry gave her son $300 with which to purchase a team of horses, and paid to W. A. Chase $362 for lumber and material purchased by William E. Berry to be used in the construction of a broom-corn shed upon the premises covered by the mortgage in question as in consideration for the note and mortgage here involved. We are clearly of the opinion that the consideration stated was sufficient to support the transaction.

All of the evidence in this case was taken before the master, and while the findings of facts by the master are merely advisory to the chancellor they are entitled to due weight in consequence of the superior opportunities afforded the master to determine the credibility of the witnesses by having seen them and having observed their demeanor while testifying. Keuper v. Mette, 239 Ill. 586; Kelly v. Fahrney, 242 Ill. 241. While the master in his report suggested to the court that there was considerable incompetent testimony in the case on account of the death of Casander E. Berry and Salathiel Miller, and that such incompetent testimony had been considered by him in arriving at his findings and conclusions, the incompetent testimony so considered by the master was offered by both parties to the proceeding and was of such character that it could not have inured to the special advantage of either party. In considering the objections to the master's report upon the issues of fact involved, the

chancellor had no better opportunity than is afforded us to arrive at a correct conclusion upon the evidence as reported by the master.    State Bank v. Barnett, 250 Ill. 312.

It is elementary that fraud will not be presumed but must be proved as alleged. The publicity which attended the execution of the note and mortgage by Casander E. Berry as disclosed by the evidence is wholly inconsistent with the theory of defendants in error that she was fraudulently induced by plaintiff in error and Enterline, the justice of the peace, to execute said note and mortgage, and there is no substantive proof in the record in support of such theory. The testimony of Enterline, which is unimpeached shows that the note and mortgage were fully explained to Mrs. Berry and that he took her acknowledgment of the mortgage in the customary manner in the presence of her grandson and his wife and two of her nearest neighbors. The certificate of acknowledgment of the mortgage is not to be lightly regarded. In Kosturska v. Bartkiewicz, 241 Ill. 604, it was held that while as between the parties to a deed the certificate of acknowledgment might be impeached for fraud, collusion or imposition it could not be otherwise attacked; and that the evidence upon such issue of fraud, collusion or imposition must by its completeness and reliable character fully and clearly satisfy the court that the certificate is untrue and fraudulent. We are impelled to the conclusion that the chancellor improperly sustained the exceptions of defendants in error to the master's report, and that the decree must be reversed and the cause remanded with directions to the court below to enter a decree allowing a credit of $537.50 upon the note in question as of the day it bears date and confirming said note and mortgage for the sum of $2962.50 and declaring said mortgage to be a valid lien on the premises therein described for that amount.

There is somewhat of confusion in the evidence re-

lating to the propriety of requiring the credit of $537.50 to be made upon the note and mortgage in question, but as plaintiff in error does not seriously urge his exception to the master's report in that particular we are disposed to conclude that the finding of the master upon that issue should not be disturbed.

*Reversed and remanded with directions.*

Mr. Justice Philbrick took no part.