Albert H. Milstine, Plaintiff-Appellant, *v.* Maurice E. Achler *et al.*, Defendants-Appellees.

(No. 54756;

First District—June 2, 1971.

Merwin S. Rosenberg, of Chicago, for appellant.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, (Louis A. Lehr, Jr., Arthur L. Klein, and Ronald R. Rassin, of counsel,) for appellees.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Plaintiff, Albert Milstine, (hereinafter plaintiff) brought suit against defendants Morris E. Achler (hereinafter Achler), Harry Shapiro (here-

inafter Shapiro), Royal Vertical Blind Co. (hereinafter Royal Vertical) and Kirsch Company (hereinafter Kirsch), seeking to impress a trust upon certain funds received by Royal Vertical from Kirsch, and to obtain a money judgment in the amount of $20,250. Plaintiff's complaint alleges that defendants defrauded him. The cause was referred to a Master in Chancery for hearing. The Master filed his Report, finding that the material allegations of the second amended complaint had been proven as to all defendants except Kirsch and that the equities were with the plaintiff. Defendants' objections to the Report, overruled by the Master, were ordered to stand as exceptions in the trial court. The trial court, concluding that certain of the Master's findings were erroneous, determined that the material allegations of the complaint had not been proven and entered judgment in favor of defendants. Plaintiff appeals. The issue presented for review is whether the settlement payments made by Kirsch to Royal Vertical were based upon Royal Vertical's claims against Kirsch for violation of an exclusive distributorship or whether they were based upon other claims against Kirsch.

Resolution of this issue demands that we set out the facts in detail. Plaintiff, Albert Milstine, and defendants, Maurice E. Achler and Harry Shapiro had been associated together in the ownership of patent rights to vertical venetian blinds since April, 1953. By an agreement dated May 27, 1958, the parties fixed their respective interests in the inventions, patents and royalties accruing therefrom as follows: Plaintiff—$9/20$ths; Achler—$9/20$ths; Shapiro—$2/20$ths. No provision was contained in the agreement with reference to the distribution of the vertical venetian blinds.

On April 29, 1953, preceding the execution of the above agreement, plaintiff, Achler and Shapiro, as licensors, entered into a licensing agreement with Kirsch, a Michigan corporation, as licensee. The 1953 licensing agreement granted Kirsch an exclusive license to manufacture, promote and market vertical venetian blinds. Kirsch in turn appointed the licensors, plaintiff, Achler and Shapiro, as distributors for Cook County, reserving the right to approve other distributors for Cook County, subject to the prior written consent of the licensors. The agreement also provided that these Cook County distributorship rights could be delegated by the licensors to any other individual, firm, or corporation. Other parts of the agreement provided: (1) that the licensee, Kirsch, use every reasonable endeavor to promote the marketing and sale of the licensed articles to as wide an extent as its facilities would permit and (2) that if royalties for each of the second and third years of the term, starting July 1, 1953, do not reach $25,000, the licensors have the right to cancel the license upon sixty days notice but licensee Kirsch could within such

period make up the deficiency thereby continuing the agreement in force.

Pursuant to the 1953 licensing agreement, plaintiff, Achler, and Shapiro, appointed Associated Blind Company as distributor for Cook County. Associated's name was subsequently changed to Royal Vertical Blind Company. Until February of 1955, plaintiff, Achler, and Shapiro each owned one-third of Royal Vertical's stock. In addition, the three licensors received royalties pursuant to the terms of the 1953 licensing agreement on all vertical blinds and parts manufactured and sold by Kirsch, whether distributed in Cook County or in any other part of the country. In February, 1955, plaintiff sold his entire interest in Royal Vertical to Achler and Shapiro for $17,000 to $19,000. While plaintiff thereafter had no interest in Royal Vertical he continued to receive his royalties from Kirsch under the 1953 licensing agreement.

The events of 1956-1957 are in dispute. Plaintiff testified that in 1956 the licensors complained that Kirsch was not as aggressive regarding advertising and promotion as the licensing agreement required. According to plaintiff, many meetings were held with Kirsch discussing advertising and promotion. Plaintiff testified that Kirsch asked for more time to develop promotion. Shapiro denied that there were ever any complaints or conferences regarding promotion. Achler also denied that there was any disagreement with Kirsch about promotion of the blinds. The license agreement was not terminated and no cause of action was brought against Kirsch. Plaintiff also testified that royalties for the second and subsequent license years did not reach the annual sum of $25,000 (they reached $20,000) and that an infringement claim had been made by a California company against Kirsch which resulted in a settlement. According to plaintiff, the licensors had discussions with Kirsch regarding both matters.

In 1960, Achler and Shapiro discovered that Kirsch had secretly appointed another company, Universal Venetian Blind Co., to distribute vertical blinds in Cook County without the consent of the licensors. This appointment was in direct violation of the 1953 licensing agreement. Royal Vertical's sales had dropped considerably because of the secret competitor. Plaintiff also discovered Kirsch's secret appointment. According to Achler, since plaintiff no longer had any interest in Royal Vertical, plaintiff wanted Royal Vertical to withhold filing suit against Kirsch because he was afraid such a suit would affect his royalties. Negotiations commenced between officers of Kirsch and Achler and Shapiro, acting on behalf of Royal Vertical. In late 1962, Kirsch agreed to withdraw the competing distributor and to pay Royal Vertical $45,000 in settlement of its claims. In December of 1962, Kirsch prepared an initial form of settlement and tendered it to Achler and Shapiro. The settlement

agreement included signature lines for Royal Vertical, Achler, Shapiro and plaintiff. Achler submitted the agreement to the plaintiff for signature, but plaintiff refused to sign. Achler and Shapiro informed Kirsch that plaintiff refused to sign but added that plaintiff no longer had any interest in Royal Vertical. Kirsch then re-drafted the settlement agreement without a place for plaintiff's signature and again submitted it to Royal Vertical for acceptance. Royal Vertical, Achler, Shapiro, and Kirsch executed the agreement as amended in late December 1962. The entire $45,000 consideration was paid to Royal Vertical. No part of the $45,000 was received by Achler or Shapiro. Plaintiff prays for a money judgment of $20,250 or $\frac{9}{20}$ths of $45,000.

Plaintiff claims that his rights were affected by the 1962 settlement agreement and advances such theories as fraud, joint venture, violation of fiduciary obligation and breach of contract to support recovery. Plaintiff makes the factual contention that the settlement agreement was based not only upon Royal Vertical's claim against Kirsch for its secret distributorship but also upon the licensors' claims against Kirsch for its failure to promote the blinds, its failure to meet the $25,000 royalty level and its involvement in the patent infringement claim. Defendants contend that both the original and amended settlement agreement provide on their face that the settlement was based upon Royal Vertical's claim against Kirsch for the latter's secret distributorship.

We shall deal with the factual contentions first. The record discloses that Kirsch's alleged failure to promote blinds, its failure to meet a $25,000 royalty level and its involvement in a patent infringement claim did not constitute any part of the basis of the settlement agreement. Only one witness, the plaintiff, testified that "many meetings" took place with Kirsch in 1956 concerning Kirsch's failure to promote. No meetings took place after 1957. The settlement agreement was executed in 1962, five years after the alleged meetings. Nowhere does the settlement agreement indicate that the claims settled were the claims arising out of Kirsch's failure to promote blinds. Plaintiff also contends that the provision in the licensing agreement granting the licensors the right to cancel upon 60 days notice if yearly royalties do not reach $25,000 constitutes a minimum guarantee. The thrust of plaintiff's contention is that Kirsch's violation of the alleged minimum guarantee gave rise to a claim which comprised part of the 1962 settlement. The language of the licensing agreement merely gives the licensors the right to cancel upon 60 days notice. This language does not constitute an automatic guarantee. Consequently, the payment of a $20,000 annual royalty without any notice of cancellation by the licensors was not a *per se* violation of the licensing agreement by Kirsch and did not constitute any part of the basis of the

settlement agreement. Also questioned by plaintiff is a patent claim made by a California company against Kirsch. The claim resulted in a separate settlement whereby the licensors agreed to accept a reduction in royalties from 5 percent to 2½ percent. Plaintiff's counsel even admitted to the Master that the infringement settlement "had nothing to do with  *   *   *" (the 1962 settlement agreement).

■■  Plaintiff has not shown that any of the above alleged claims constituted part of the basis of the 1962 settlement agreement. On the contrary, the amended settlement agreement provides on its face that the settlement was based upon Kirsch's violation of Royal Vertical's exclusive distributorship. We find that the phrase "any and all claims, demands, rights or causes of action" does not encompass plaintiff's alleged claims, since that phrase in the settlement agreement is followed by the words "arising out of the establishment, activities, operation and otherwise of and by UNIVERSAL VENETIAN BLIND COMPANY  *   *   *  as a distributor or distributors in Cook County, Illinois." We believe that the words "all claims" represent nothing more than an attempt by Kirsch to obtain as much as possible in exchange for its $45,000.

Plaintiff next urges for our consideration the theory that as part of a joint venture he was owed a fiduciary obligation which defendants violated. We agree with the trial court's holding that plaintiff, Achler and Shapiro were engaged in a joint venture *solely* as to their respective interests in the patents and inventions for vertical blinds. The joint venture did not encompass or relate to the distribution of blinds in Cook County and did not encompass any loss or profits or damages sustained by Royal Vertical.

■■  The 1953 licensing agreement grants to Kirsch an exclusive license to sell and market the blinds and can only be read as providing that the parties intended distribution to be put into the hands of Kirsch. As to Cook County only, Kirsch granted the licensors the right to either distribute or select, as they did, a separate entity (Royal Vertical) to be the sole distributor. Since the 1953 licensing agreement covered the subject of distribution and since Royal Vertical had long since been designated as Cook County distributor pursuant to the 1953 agreement, the 1958 agreement which proportioned the respective interests of plaintiff, Achler and Shapiro, did not deal with the subject of distribution. This 1958 agreement apparently amended an agreement entered into in 1953 between plaintiff and Achler only, which agreement is not in evidence and not part of the record. The concert in action, then, did not include the rights of distribution already ceded to Kirsch and to Royal Vertical.

Plaintiff admits that the fiduciary obligation he alleges must find its support in the foundation of a joint venture between the parties. Since

278

we have determined that the joint venture did not include the rights of distribution, plaintiff must prove the existence of a fiduciary relationship by clear and conclusive evidence. (*Jones v. Washington* (1952),, 412 Ill. 436, 107 N.E.2d 672.) It is not enough for plaintiff merely to plead fraud and conspiracy to defraud. Since plaintiff has failed to prove the existence of a fiduciary relationship, he has failed to prove any breach of such relationship and cannot recover.

● 3   For the reasons given we uphold the findings and conclusions reached by the trial court. We find no error on the part of the trial court in re-examining the evidence and reaching its own conclusions even though they were at variance with those reached by the Master. *Mathias v. Miller* (1911), 164 Ill.App. 113, 123.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.