DONALD CONN, Plaintiff-Appellee, Cross-Appellant, *v.* BANK OF CLARENDON HILLS, Defendant-Appellant, Cross-Appellee.

(No. 55126; ▮▮▮▮▮▮▮▮

First District—July 14, 1971.

Winston, Strawn, Smith & Patterson, of Chicago, (Frank O. Wetmore II and Edward J. Wendrow, of counsel,) for appellant.

L. Louis Karton and Harold L. Priess, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Plaintiff, Donald Conn, the payee of a check drawn by Holman upon the defendant, Bank of Clarendon Hills, brought an action upon the check and recovered judgment thereon after a trial without a jury. The check was presented to defendant on January 25, 1969, by the Federal Reserve Bank after having been initially deposited by plaintiff in his bank, The Bank of Lincolnwood. To avoid liability to plaintiff under the Commercial Code, it was necessary for defendant to send a notice of dishonor to the Federal Reserve Bank before defendant's "midnight deadline", which was January 27, 1969. The trial court found that defendant did not send a notice of dishonor until January 28, 1969, and entered judgment for the plaintiff for the full amount of the check, $17,967.00. Defendant, Bank of Clarendon Hills, appeals the judgment contending the trial court improperly held that the check was not returned before the "midnight deadline." A statement of the facts follows:

On January 21, 1969, plaintiff delivered $15,900.00 face value silver United States dimes and quarters to one William Holman, who with his sister Diane, was doing business as "LaGrange Coins." Plaintiff received Holman's check drawn upon the defendant Bank of Clarendon Hills, in the amount of $17,967.00 as consideration for the coins. Plaintiff deposited the check in his bank, The Bank of Lincolnwood on January 23, 1969. From an examination of the check, it can be determined that the names of the banks and other institutions through which the check passed and the sequence in which it happened is as follows:

January 23, Bank of Lincolnwood, Lincolnwood, Illinois; January 24, Harris Trust & Savings Bank, Chicago; January 25, the defendant Bank of Clarendon Hills; and on January 28, the Federal Reserve Bank. (The cancellation line from an IBM proof machine dater indicates that the Federal Reserve Bank stamped the check as a return item on January 28.) The defendant bank returned the check to the Federal Reserve with a notice of dishonor which did not state any reason constituting dishonor but merely contained a notation "Refer to Maker".

Mrs. Margaret Swanson, secretary to the president of the defendant bank, testified to the procedures involved in returning items to the Fed-

eral Reserve Bank. Checks drawn on the bank's customers are received from the Federal Reserve Bank early in the morning. The are filmed, marked paid, and then picked up in the evening by a banker's dispatch service and transported to another institution, which does the computer posting. They are then returned to defendant the following day, at which time a decision is made as to whether to return a check or pay it. If the decision is made to return a check, it is tagged and sent back to the Federal Reserve Bank along with the bank's check paying the Federal Reserve for the cash letter checks of the previous day. It is returned "late evening, early evening, four-thirty, five o'clock sometimes later." Mrs. Swanson had no independent knowledge of plaintiff's check, but she stated she could "tell" the check was returned to the Federal Reserve Bank late in the evening of January 27, 1969.

Mr. Arthur Kurbat, a supervisor in the Federal Reserve Bank, testified that the check was received at the Federal Reserve Bank as a return item on January 28. He could determine the date since the cancellation stamp put on by the IBM proof machine dater shows the date of receipt to be January 28.

In reviewing this case, the judgment of the trial court will not be reversed unless it is contrary to the manifest weight of the evidence. The trial court found that the check was not returned before the "midnight deadline." (Ill. Rev. Stat. 1969, ch. 26, sec. 4—302 (a).) The trial court based its finding on such evidence as the cancellation stamps on the check and the testimony of an impartial witness, a supervisor from the Federal Reserve Bank. Margaret Swanson's description of the general custom of the defendant bank and her self-serving declaration that she could tell when the check was returned to the Federal Reserve did not prove that defendant met the "midnight deadline." (*State Bank of East Moline v. Standaert* (1948), 335 Ill.App. 519, 524.) We cannot say, as defendant contends, that the "court's finding that the notice was in fact sent on the 28th is based on no probative evidence whatsoever."

Defendant also contends that the trial court's oral comments clearly show that the primary, if not the sole motivating force, for entering judgment against the bank was that it regarded defendant as having been guilty of some sort of fraud upon the plaintiff. At the conclusion of trial, the trial court stated:

> "I think in order to clarify the record for the reviewing court the reasons for the court's findings, and the findings should be specified, and the basis here is the course of conduct of the bank was not an honest one. It bordered on fraud. It bordered on permitting LaGrange Coins to maintain an account which gave the appearance of an active account with substantial balances when, in fact,

it didn't. All the bank waited for was to get enough money in so that it could apply it on that loan (a loan from the defendant bank to LaGrange Coins). The only substantial deposit during the thirteen day period reflected by the evidence here was the proceeds of the coins sold by the plaintiff to the man in Joliet.

It appears to the court very clearly that the Bank timed its actions and conducted its activity in such a manner as to keep this very bad account open, misled the customers of LaGrange Coins until somehow they could grab the sufficient sum of money which they did. They did grab it for the first time the account shows substantial overdrafts."

■■ We need not elaborate on what "motivated" the trial court to enter judgment against the defendant since we have held the trial court's finding that the check was not returned before the "midnight deadline" is not contrary to the manifest weight of the evidence. We do note, though, that "Illinois follows the rule that a bank cannot apply the deposits of a debtor to an unmatured indebtedness in the absence of express authority so to do." (*Faber, Coe and Gregg, Inc. v. First National Bank of Chicago* (1969), 107 Ill.App.2d 204, 209, 246 N.E.2d 96.) It is significant that the defendant bank introduced no evidence of its loan to LaGrange Coins, the terms, amount, or due date.

■■ We also find that plaintiff is entitled to interest on its claim at the legal rate from January 25, 1969. Plaintiff has established his right to interest under the Interest Act. (Ill. Rev. Stat. 199, ch. 74, sec. 2), since defendant has withheld money "by an unreasonable and vexatious delay of payment." See *Cooper v. Brogni* (1964), 50 Ill.App.2d 70, 199 N.E.2d 619.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed as modified.

Judgment affirmed as modified.

BURMAN and DIERINGER, JJ., concur.