(No. 44669. )

DONALD CONN, Appellee and Cross-Appellant, v. BANK OF CLARENDON HILLS, Appellant and Cross-Appellee.

*Opinion filed Oct. 2, 1972.—Rehearing denied Nov. 29, 1972.*

FRANK O. WETMORE II, EDWARD J. WENDROW and WINSTON, STRAWN, SMITH & PATTERSON, all of Chicago, for appellant and cross-appellee.

L. LOUIS KARTON and HAROLD L. PRIESS, of Chicago, for appellee and cross-appellant.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

In an action brought by Donald Conn, the payee of a check drawn upon the defendant, Bank of Clarendon Hills, the circuit court of Cook County held that the evidence failed to show that the bank had sent notice of dishonor of the check before its statutory midnight deadline, and was therefore accountable for the amount of the check. The appellate court affirmed on the ground that the decision of the trial judge was not contrary to the manifest weight of the evidence. (133 Ill.App.2d , 273 N.E.2d 612.) We granted leave to appeal.

The check was drawn by Diane G. Holman upon an account in the defendant bank maintained in the names of James B. Holman, Diane G. Holman and William Holman doing business as La Grange Coins. The plaintiff, the payee of the check, operated a vending machine business and had sold silver coins having a face value of $15,900 to La Grange Coins and received in payment therefor the check in question, which was drawn on the defendant bank in the sum of $17,967. He deposited the check in his account in the Bank of Lincolnwood, and in the ordinary course of collection it was presented for payment to the defendant bank by the Federal Reserve Bank of Chicago with its cash letter dated January 25, 1969. January 26 was a Sunday, and it is undisputed that under sections 4—302 and 4—104 of the Uniform Commercial Code the defendant bank was required to send notice of dishonor of the check before "midnight on its next banking day following the banking day on which it receives the relevant item." (Ill.Rev.Stat. 1969, ch. 26, pars. 4—104, 4—302.) In this case that day was January 27.

The remittance check of the bank payable to the Federal Reserve Bank in the sum of $309,497.25 is dated January 27, 1969, as is its remittance letter addressed to the Federal Reserve Bank. The remittance letter states that

it is in response to the Federal Reserve Bank's cash letter of January 25, 1969, in the amount of $334,399.39. The check in question, together with nine other checks drawn on the account of La Grange Coins, and ten checks drawn on other accounts, were returned with the remittance letter which stated, "The enclosed unpaid checks have been deducted from the cash letter of 1/25/69 and the balance due you $309,497.25 has been remitted."

The appellate court described the testimony concerning the handling of the check as follows:

"Mrs. Margaret Swanson, secretary to the president of the defendant bank, testified to the procedures involved in returning items to the Federal Reserve Bank. Checks drawn on the bank's customers are received from the Federal Reserve Bank early in the morning. They are filmed, marked paid, and then picked up in the evening by a banker's dispatch service and transported to another institution, which does the computer posting. They are then returned to defendant the following day, at which time a decision is made as to whether to return a check or pay it. If the decision is made to return a check, it is tagged and sent back to the Federal Reserve Bank along with the bank's check paying the Federal Reserve for the cash letter checks of the previous day. It is returned 'late evening, early evening, four-thirty, five o'clock sometimes later.' Mrs. Swanson had no independent knowledge of plaintiff's check, but she stated she could 'tell' the check was returned to the Federal Reserve Bank late in the evening of January 27, 1969.

Mr. Arthur Kurbat, a supervisor in the Federal Reserve Bank, testified that the check was received at the Federal Reserve Bank as a return item on January 28. He could determine

the date since the cancellation stamp put on by the IBM proof machine dater shows the date of receipt to be January 28."

The burden was upon the plaintiff to prove that the bank had violated the statute and so had become accountable for the amount of the check, because it did not "send notice of dishonor until after its midnight deadline." In our opinion the plaintiff failed to meet that burden. Indeed we fail to find any evidence which indicates that the notice of dishonor was not sent by the defendant bank on January 27. Both the trial judge and the appellate court, in reaching a contrary conclusion, emphasized the circumstance that the defendant's remittance letter returning the check and giving notice of dishonor, although dated January 27, was not stamped by the Federal Reserve Bank until January 28. This circumstance was regarded as conclusively demonstrating that the notice had not been sent until January 28.

The trial judge stated: "The lady who testified, the girl who testified said it was returned late evening of the 27th, but the impartial witness from the Federal Reserve said it was received at the Federal Reserve on the 28th. Now, she would have this Court believe that the dispatch service rode around all night or picked it up so late at night and held it and delivered it the following morning. I don't believe that. I don't believe that it was sent back by the dispatch service on the 27th. There is no evidence to convince me other than her testimony that it was. I believe it was sent on the 28th as would be the normal and reasonable procedure and it was received on the 28th."

We do not agree that in order to find that notice of dishonor was sent on January 27 it is necessary to believe that the dispatch service carried the remittance letter and its enclosures around all night, although there is no showing in the record as to the number of banks at which stops were made during the trip from Clarendon Hills to downtown Chicago. It is simply necessary to recognize

that remittance letters, dishonored checks and settlement checks must of necessity be returned in locked packages or pouches. The Federal Reserve stamp indicates the date of receipt, but not the hour. The January 28 date of receipt is to be expected in the absence of a showing that the Federal Reserve kept on duty all night employees who were authorized to open and stamp the items contained in pouches received after regular hours.

Certainly it cannot be said to be "the normal and reasonable procedure" of any bank to send its response to a cash letter dated January 25 to the clearing bank on January 28. Such a "normal and reasonable procedure" would make the bank accountable for every item dishonored and returned. We hold, therefore, that the bank did not violate its statutory duty.

The trial judge was troubled by the fact that after the plaintiff had delivered his coins to La Grange Coins and received the check in question for them, those coins were turned over by La Grange Coins to one Ray Kotansky who gave to La Grange Coins his check in the sum of $23,593.30. That check was deposited by La Grange Coins in its account in the defendant bank but it had not yet been collected on January 27 when the check in question was dishonored by the bank. The amended complaint alleged several legal theories upon which the plaintiff sought to recover against the Holmans, the defendant bank or both. One count asserted liability on the part of the Holmans on the ground that they had agreed to act as agents for the plaintiff in the transaction with Kotansky and that the funds received from Kotansky were received by the Holmans in trust for the plaintiff. Another count charged the defendant bank with knowledge that these funds were deposited by the Holmans in trust for the plaintiff. Both of those counts, however, had been dismissed and were not involved in the present trial.

The judgment order entered in the trial court contained the following finding: "5. That the said defendant

Bank did not act in good faith in dishonoring plaintiff's said check and in refusing to pay plaintiff the sum of $17,967.00 due on said check; that plaintiff's said check had priority of right to the funds on deposit in the said checking account of said La Grange Coins upon which said check was drawn as against any attempted set-off of the said defendant Bank, predicated upon an alleged indebtedness to the said Bank from the drawer of said check, which attempted set-off was exercised on January 28, 1969."

This transaction is governed by section 3—409(1) of the Uniform Commercial Code, which provides: "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." (Ill.Rev.Stat. 1969, ch. 26, par. 3—409(1).) The effect of this section has been stated in these terms: "In other words, the holder of a check cannot enforce it against the bank on which it is drawn unless the bank has accepted or certified the check. If the drawee bank refuses for any reason to pay the check, the holder's only recourse is against the drawer or any prior indorsers." (Brady on Bank Checks, 4th ed. 1969, p. 26.) In this case there is no suggestion that the bank voluntarily accepted the check and we have held that there was not an involuntary acceptance because of a late return under section 4—302.

The appellate court in its opinion, after citing authority to the effect that a bank cannot apply the deposits of a debtor to an unmatured indebtedness without express authority to do so, continued: "It is significant that the defendant bank introduced no evidence of its loan to La Grange Coins, the terms, amount, or due date." (273 N.E.2d at 614.) To refute the adverse inference drawn by the appellate court, the bank has moved for leave to supplement the record on appeal by filing in this court a copy of the note which was before the trial court in

connection with a motion for summary judgment but was not included in the record on appeal. That motion was taken with the case and is allowed. The note to which the appellate court referred is a demand note dated January 21, 1967, from La Grange Coins to the defendant bank, in the original amount of $57,070, on which there was a balance of more than $50,000 remaining due on January 28, 1969, when the setoff was exercised. The bank's right to exercise a setoff against the funds on deposit in the account of La Grange Coins is not challenged, and the fact that the note was not originally included in the record on appeal is of no significance.

The judgments of the circuit and appellate courts are reversed.

*Judgments reversed.*