582 P.2d 809

**ENGINE PARTS, INC., Petitioner,**

v.

**The CITIZENS BANK OF CLOVIS and the Citizens State Bank of Albuquerque, Respondents.**

**CITIZENS STATE BANK OF ALBU-QUERQUE, New Mexico, Petitioner,**

v.

**CITIZENS BANK OF CLOVIS and Engine Parts, Inc., Respondents.**

Nos. 11738, 11740.

Supreme Court of New Mexico.

May 17, 1978.

As Amended June 8, 1978.

Keleher & McLeod, Charles A. Pharris, Robert H. Clark, Albuquerque, for petitioner in No. 11738.

Dickson & Dubois, Frank P. Dickson, Jr., John F. Caffrey, Albuquerque, for petitioner in No. 11740.

Charles C. Spann, Dickson & Dubois, Frank P. Dickson, Jr., John F. Caffrey, Albuquerque, Lynell C. Skarda, Clovis, for respondents in No. 11738.

Keleher & McLeod, Charles A. Pharris, Robert H. Clark, Charles C. Spann, Albuquerque, Lynell C. Skarda, Clovis, for respondents in No. 11740.

## OPINION

EASLEY, Justice.

Appellant, Engine Parts, seeks to recover $17,370.00 either from Citizens Bank of Clovis (Clovis Bank) or alternatively from Citizens Bank of Albuquerque (Albuquerque Bank). The trial court entered judgment in favor of Engine Parts against the Clovis Bank and dismissed its action against the Albuquerque Bank. The Court of Appeals reversed. We affirm in part and reverse in part.

K & W Enterprises, Inc., purchased twenty-seven engines from Engine Parts. As partial payment for the engines, it delivered to Engine Parts two drafts dated September 15, 1973 and October 15, 1973, each in the amount of $8,658.00. When the drafts became due, Engine Parts presented them to the Albuquerque Bank. The Albuquerque Bank forwarded the drafts to the Clovis Bank.

The September draft was received by the Clovis Bank on September 21, 1973 and the October draft was received on October 18, 1973. Albuquerque Bank credited Engine Parts' account for the amount of the drafts. The Clovis Bank immediately acknowledged receipt of the drafts and contacted K & W Enterprises and was informed that the drafts would not be paid because the amount was not correct. Two and one half months later, on January 3, 1974, the Clovis Bank gave notice to the Albuquerque Bank that the drafts were dishonored and returned them to Albuquerque, whereupon the Albuquerque Bank notified Engine Parts of the dishonor and charged back the amount of the drafts to Engine Parts' account. By this time Engine Parts' chance of recovery from K & W was severely prejudiced since K & W was by then in financial distress.

The trial court held that the Clovis Bank was a "payor bank" and that it failed to handle the draft before its midnight deadline and was liable for the face amount of the drafts. In the alternative the trial court held that if the Clovis Bank was not a payor bank, it was a "collecting bank" and failed to use ordinary care in handling the drafts and thus was liable for the $17,370.00.

The Court of Appeals held that from the face of the drafts, the Clovis Bank was a payor bank but that since the collection instructions said the draft was payable "thru" the Clovis Bank it therefore became a collecting bank. It held that, as collecting bank, it did use ordinary care in following its instructions in handling the drafts, and was not liable to Engine Parts. The Court of Appeals also reversed the trial court's decision as to the Albuquerque Bank and remanded the case to the trial court to determine if the Albuquerque Bank breached its duty to Engine Parts.

*The Clovis Bank was a Payor Bank and not a Collecting Bank*

Engine Parts claims that the Clovis Bank was a drawee of the draft and as such was a payor bank. The Clovis Bank argues that when the Clovis Bank received the draft it was accompanied by a collection letter which indicated that the draft was to

be paid "thru" [sic] it. It argues also that it followed the instructions on the collection letter, and thus followed the instructions of its immediate transferor. § 50A–4–203, N.M.S.A.1953 (Repl.1962). Engine Parts argues that the collection letter should not be considered in determining whether the Clovis Bank was a payor bank. This latter contention is correct. The status of a negotiable instrument is to be determined from its face—from the language used or authorized to be used thereon by its drawer or maker—and not from documents attached thereto by other parties. *First State Bank at Gallup v. Clark,* 91 N.M. 117, 570 P.2d 1144 (1977).

It is not, of course, the subjective intent of the drawer which is determinative. *Wilhelm Foods, Inc. v. National Bank of North America,* 382 F.Supp. 605, 610 (S.D.N.Y.1974). It is not what he intended to put on the draft, but was actually written there when he signed the instrument which controls the validity, the negotiability, and the character of the parties thereto as drawer, drawee and payee. The status of a party to the instrument as drawer, drawee, or payee is determined by the drawer when he executes a negotiable instrument which meets the required definition of such an instrument under the U.C.C. Thus, information or instructions on a collection letter attached by a depository or collecting bank are irrelevant in ascertaining who the drawee of the instrument is or whether a bank is a payor or collecting bank. *First State Bank, supra.*

The draft before completion read as follows:

Albuquerque, New Mexico, _____ 19__
_____Pay to the order of
_____$_____
_____Dollars
   value received and charge to account of    with exchange
To_____)
                              )
_____)
_____)

Usually the blank before "Pay to the order of" is used to fill in limitations on the time of payment, not the name of the drawee. Thus phrases such as "On sight," "Five days after sight," "On demand," or "On receipt

of goods," etc. are usually inserted. If nothing is inserted, the draft is deemed payable on sight (on demand) after the date it is drawn. § 50A–3–108, N.M.S.A.1953 (Repl.1962). In the present case the name "Citizens Bank of Clovis" was inserted before "Pay to the Order of." Although unusual, this is a clear designation of who the drawee is, since the order sentence reads in plain English:

"Citizens Bank of Clovis pay to the order of Engine Parts, Inc. $8685.00 Eight Thousand Six Hundred Eighty Five and No/100 Dollars . . .."

This constitutes a clear order to the Citizens Bank of Clovis to pay the designated amount.

Normally the name of the drawee is placed after the promise to pay, often, but not always, with the designation "To" before it. That is, where the drawee is not otherwise designated, a name placed on the drafts before the order to pay or after it (with or without the designation "To") will usually be intended to be the drawee of the draft.

Here the name of the drawer's own corporation and its address was typed in after the designation "To." Thus on its face the draft appears to have two drawees. There are various possible interpretations as to what the draft means by purportedly designating two drawees. But at the very least, it is clear from the face of the instrument that Citizens Bank of Clovis is designated as a drawee and is ordered to pay the money.

Where a draft is unclear as to whether a party named in a draft is a drawee, the court, if necessary, must resolve the ambiguity. *Wilhelm, supra,* at 609. The U.C.C. provides no rule for resolving such ambiguities. *Wilhelm, id.; see* § 50A–3–118 N.M.S.A.1953 (Repl.1962). Here there is no need to look to extrinsic facts and surrounding circumstances as in *Wilhelm* because the two names purportedly designating drawees do not occur together. Thus the situation is not like that in *e. g. Farmers Coop. Livestock Mgt. v. Second*

*Nat'l Bk.*, 427 S.W.2d 247 (Ky.1968) (draft "To Second National Bank to be charged to account of Robert Martin"—bank held drawee), *San Antonio Livestock Mkt. Inst. v. First Nat'l Bk.*, 431 S.W.2d 408 (Tex.Ct. Civ.App.1968) (draft "To Julius Caesar Cattle Account, First National Bank"—bank held not drawee); *Branch Banking & Trust Co. v. Bank of Washington*, 255 N.C. 205, 120 S.E.2d 830 (1961) (draft "To Washington Hog Market, The Bank of Washington"—bank held not drawee); or *Tyler Bank & Trust Co. v. T. B. Saunders*, 159 Tex. 158, 317 S.W.2d 37 (1958) (draft "To Shaw Pkg. Co., Tyler State Bank & Tr. Co.—bank held not drawee). Here the bank was designated as drawee in the order sentence of the draft. The insertion of the additional name of K & W Enterprises in the spaces after "To" does not nullify the fact that the Clovis Bank is designated separately as drawee in a way that is clear, and is designated in a manner that even an unlearned drawer would know meant that the bank was to pay.

No party to this appeal has advanced any reasonable meaning for inserting the words "Citizens Bank of Clovis" before "pay to the order of" other than that the drawer intended the Clovis Bank to pay. Only the designation of K & W Enterprises is ambiguous. This latter ambiguity is irrelevant since a draft may designate more than one drawee, § 50A–3–504, N.M.S.A. 1953 (Repl.1962), and whether or not K & W Enterprises is a drawee does not change the fact that the Clovis Bank is a drawee. Presentment for payment can be made to any named drawee since each is ordered to pay. § 50A–3–504.

Because it was a drawee and a bank, the Citizens Bank of Clovis was clearly a "payor" bank under § 50A–4–105(b), N.M.S.A.1953 (Repl.1962), since it was a bank by which the item is payable as drawn. It is a "payor" bank based on the words used on the instruments, and we are, therefore, not dependent on testimony in the record or on findings of fact or conclusions of law made by the lower court to ascertain its status as payor. Because the Clovis Bank is a "payor" bank, it cannot be deemed a "collecting" bank, since § 50A–4–105(d) defines "collecting bank" as "any bank handling the item for collection *except the payor bank*." (Emphasis added.) Nor was the draft merely to be paid "through" the Clovis Bank or "at" the Clovis Bank. To make a draft payable "through" or "at" a bank, and thus designate the bank as a mere conduit for payment and not as a "payor" bank directly ordered to pay, the *drawer* of the draft must expressly write the word "through," "pay through," "at," "payable at," or similar words before the name of the bank *on the instrument itself.* §§ 50A–3–120 and 121, N.M.S.A.1953 (Repl. 1962). A party who is not the drawer cannot, without authority from the drawer, add these words to the instrument, and saying "payable thru" on some attached document (as on the collection letter attached to the draft in this case) has no effect on the terms set out in the instrument itself. *First State Bank, supra.*

*Strict Liability of the Clovis Bank*

The Albuquerque Bank failed to read the entire instrument carefully, but apparently simply read the name of K & W Enterprises in the space following "To" on the form draft and decided that K & W Enterprises was the drawee. It then attached a collection letter stating that the attached draft was sent to the Clovis Bank for "collection" and that it was "One envelope draft in the amount of $8685.00 drawn on K. $[sic] W. Enterprises and payable to us thru [sic] you for our customer Engine Parts, Inc." The words "our customer" and "Inc." were left out on the other otherwise identical collection letter. The collection letter also contained the following instructions:

1. Return at once if not paid on maturity.
2. If unpaid give full reason.
3. Deliver documents only when paid.
4. Do not credit until paid.
5. No protest unless otherwise instructed.
6. Protest—none.
7. Date due—sight.

■ The mere forwarding of an item to the bank upon which it was drawn accompanied by a letter stating the item was enclosed for "collection" and the treatment of the item by the drawee bank as a "collection" item does not establish that the bank upon which the item was drawn is a "collecting" bank. *Farmers Coop. Livestock Mkt., supra.*

The words on the form envelope draft are printed on the *outside* of an envelope which is approximately the size of a regular business envelope. The attached "collection letter" is printed on a small form of about the same size. It barely covers the printed draft form and in no way prevents a quick inspection of the draft to determine such routine things as whether it is dated, whether it has matured, whether it has been properly completed, whether there appear to be any unauthorized changes or alterations, who the drawer and drawee are, and whether there are any apparent irregularities in the instrument, etc.

■ Regarding the instruction to "return at once if not paid on maturity," the Court of Appeals held since the drafts were dated September 15 and October 15 and were received by the Clovis Bank after those dates, that the drafts had already matured and that this instruction was a nullity. This is incorrect. The drafts were sight drafts. Sight instruments are demand instruments and mature, not on the date drawn, but any time after that date when demand for payment is made. § 50A–3–108, N.M.S.A.1953 (Repl.1962). The drafts were matured when they were presented to the Clovis Bank. *Flintkote Company v. Grimes,* 281 Ala. 707, 208 So.2d 87 (1968). Therefore when it learned that K & W Enterprises would not honor the draft it should have immediately sent the items back.

■ Engine Parts argues that the Clovis Bank is liable to it for the full amount of both drafts because it was a payor bank and it held the drafts past its "midnight deadline." Engine Parts relies on § 50A–4–302(a), N.M.S.A.1953 (Repl.1962) which states:

*In the absence of a valid defense such as breach of a presentment warranty* (subsection (1) of section 4–207 [50A–4–207]), settlement effected or the like, *if an item is presented on* and received by a payor bank the bank is accountable for the amount of

(a) *a demand item* other than a documentary draft whether properly payable or not if the bank, *in any case where it is not also the depositary bank,* retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after the midnight deadline.

Section 50A–4–105(a) defines "depositary bank" as "the first bank to which an item is transferred for collection even though it is also the payor bank." The items in question here were first transferred to the Albuquerque Bank, therefore the Clovis Bank is not a "depositary bank." Under § 50A–4–302(a) therefore it is liable as a payor bank for the amount of demand items *presented for payment* which it either fails to settle for before "midnight of the banking day of receipt" or which it fails to pay or return before its "midnight deadline" [which § 50A–4–104(1)(h), N.M.S.A.1953 (Repl.1962) defines as "midnight on its next banking day following the banking day on which it receives the relevant item."] But to be liable, two other important conditions must be met.

1. The item must be presented for payment;

2. The payor bank must not have, or must fail to raise, any valid defenses including but not limited to breach of the warranties of presentment.

The record in the instant case does not show whether any such valid defenses were raised at the trial court level, and their existence, if any, or validity was not raised on appeal. Thus we do not have to consider whether the Clovis Bank had any such valid defenses.

The only remaining inquiry regarding the applicability of § 50A–4–302(a) is whether the items were properly "presented on" the Clovis Bank.

Presentment is defined in § 50A–3–504 as:

"A demand for *acceptance or payment* made *upon the . . . drawee or other payor* by or on behalf of the holder [emphasis added]."

The uncontroverted testimony and evidence in the record shows that the Albuquerque Bank, acting on behalf of its customer Engine Parts, sent the draft to the Clovis Bank, inadvertently stating the draft was payable *through* the Clovis Bank not *by* it.

The Albuquerque Bank thought that the Clovis Bank was a mere collection conduit for. payment, not the drawee and payor bank. It thought that K & W Enterprises was the drawee. Thus, since it thought incorrectly that the Clovis Bank was *not* the drawee, it did not intend by sending the drafts to the Clovis Bank, to make a "demand for *payment . . .* upon the . . . *drawee"* as required by § 50A–3–504.

The process of collection is, however, simply an attenuated demand for payment. Each collecting bank in the chain of collection becomes an agent for the owner of the item and acts for him to demand payment of the drawee. § 50A–4–201, N.M.S.A.1953 (Repl.1962). Thus every collecting bank aids in demanding payment of the drawee. Any item sent for collection is sent for eventual payment. That the Albuquerque Bank was mistaken as to who the drawee was does not change the fact that the Clovis Bank was the drawee. When the Albuquerque Bank sent the drafts to the Clovis Bank, even though it thought it was demanding payment through another collecting bank, it was in fact demanding payment "upon . . . the drawee." Thus it effectively presented the drafts upon the Clovis Bank as required by § 50A–3–504. The Clovis Bank is therefore accountable for the full amount of the two demand items here involved.

The measure of damages herein is that provided in § 50A–4–302, namely the full value of the drafts which the Clovis Bank failed to promptly return, and not the measure of a bank's breach of it's duty of ordinary care set out in § 50A–4–103(5), N.M.S.A.1953 (Repl.1962). *Rock Island Auction Sale, Inc. v. Empire Packing Co.,* 32 Ill.2d 269, 204 N.E.2d 721 (1965). The liability created by § 50A–4–302 is independent of negligence and is an absolute or strict liability for the full amount of the items which it fails to return. *Bank of America Nat. T. & S. Ass'n v. Security Pac. Nat. Bank,* 23 Cal.App.2d 638, 100 Cal.Rptr. 438 (1972); *Central Bank and Trust Co. v. First Northwest Bank,* 332 F.Supp. 1166 (E.D.Mo. 1971); *See National City Bank of Rome v. Motor Contract Co.,* 119 Ga.App. 208, 166 S.E.2d 742 (1969). Even where a draft is arguably ambiguous as to whether the bank is the drawee or someone else is, where it handles the item which it in fact is obligated to pay, it takes the risk of loss if it fails to comply with § 50A–4–302. *Farmers Coop. Livestock Mkt., supra.* The fact that the drafts were sent for "collection" does not alter a payor bank's liability under this section. *Kane v. American National Bank & Trust Company,* 21 Ill.App.3d 1046, 316 N.E.2d 177 (1974). Moreover, we hold that since the Clovis Bank held the drafts for an unreasonable period, namely two and a half months beyond the time when it should have returned them, the petitioner Engine Parts is entitled to interest on its claim at the legal rate. *Conn. v. Bank of Clarendon Hills,* 133 Ill.App.2d 574, 273 N.E.2d 612 (1971), *rev'd on other grounds,* 53 Ill.2d 33, 289 N.E.2d 425 (1972); *accord, Sun River Cattle Co. v. Miners' Bank of Montana,* 164 Mont. 479, 525 P.2d 19 (1974). Not to award interest where there has been an unreasonable and unjustified delay would be an abuse of discretion.

### Liability of the Albuquerque Bank

The Clovis Bank argues that the responsibility for seeing that the draft was paid or returned should not be on it but should be on the Albuquerque Bank. It reasons that since it does not get paid for the service, it

should not have any liability for its gratuitous acts. It claims that the Albuquerque Bank should have sent out tracers on the drafts to determine their status. This reasoning is contrary to the Uniform Commercial Code.

Section 50A–4–202 clearly provides that a collecting bank must use ordinary care in presenting the draft for payment, and if the draft is not paid it must use ordinary care in returning the drafts. Ordinary care obligates a collecting bank to take seasonable action on the item. § 50A–4–202(2).

 The Albuquerque Bank was a collecting bank, § 50A–4–105(d), N.M.S.A.1953 (Repl.1962), and could be liable only if it failed to use ordinary care in sending the draft for presentment. § 50A–4–202(1)(a). The trial court found that the Albuquerque Bank did use ordinary care in handling the draft and did not breach the duty it owed to its customers, Engine Parts. We therefore affirm the trial court's decision as to the Albuquerque Bank.

Although both Engine Parts and the Clovis Bank raised the issue of whether the Albuquerque Bank's erroneous instruction (that the drafts were payable "thru" the Clovis Bank) changed the draft's designation of the Clovis Bank as drawee and payor bank, neither raised the issue of whether sending the drafts with the erroneous instruction was a breach of the Albuquerque Bank's duty of ordinary care in passing on the drafts for collection and payment and whether such a breach was a concurrent cause of the Clovis Bank's failure to promptly return the drafts upon dishonor. Since neither party properly raised the issue, we cannot consider it on appeal.

The trial court is affirmed in all respects except for its erroneous conclusion that the Clovis Bank could, alternatively, be a "collecting" bank and its failure to award interest on the judgment. This case is remanded with directions that the trial court enter judgment for Engine Parts against the Clovis Bank together with interest from the

day after the Clovis Bank's midnight deadline.

IT IS SO ORDERED.

McMANUS, C. J., and SOSA and FEDERICI, JJ., concur.