A92A0266, A92A0267. BANK SOUTH, N.A. v. ROSWELL JEEP
EAGLE, INC.; and vice versa.
(419 SE2d 522)

CARLEY, Presiding Judge.

Over a period of several weeks, appellee-plaintiff Roswell Jeep
Eagle, Inc. (RJE) sold five used cars to Heritage Auto Leasing, Inc.
and accepted as payment therefor five documentary drafts. These
documentary drafts were deposited with RJE's bank and forwarded
to appellee-defendant Bank South (Bank) for payment, but they were
eventually returned for insufficient funds. Thereafter, RJE brought
suit in several counts, seeking to recover for the Bank's alleged mis-
handling of the five documentary drafts. The case was tried before a
jury and a verdict in favor of RJE was returned. In Case No.
A92A0266, the Bank appeals from the judgment entered on the jury's
verdict and, in Case No. A92A0267, RJE cross-appeals.

*Case No. A92A0266*

1. Pursuant to OCGA § 11-4-302 (a), a payor bank, such as the
Bank in the instant case, may be liable if it fails to pay, return or give
notice of the dishonor of a demand item, *other* than a documentary
draft, by "its midnight deadline." However, the five "items" at issue
in the instant case *are* "documentary drafts" as defined in OCGA §
11-4-104 (1) (f). Accordingly, the Bank's potential liability for its han-
dling of the five documentary drafts must be determined under
OCGA § 11-4-302 (b). That statute provides that a payor bank must
act "within the time allowed for acceptance or payment of [a properly
payable] item." Thus, if the documentary drafts were "properly paya-
ble," the Bank was not required to act by "its midnight deadline"
under OCGA § 11-4-302 (a), but was required to act "within the time
allowed" under OCGA § 11-4-302 (b).

The "time allowed" for a payor bank to accept or pay a "properly
payable" documentary draft that has been presented to it under a
letter of credit is as provided in OCGA § 11-5-112 (1). However, the
five documentary drafts at issue in the instant case were *not*
presented to the Bank under a letter of credit. OCGA § 11-5-112 (1)
does not, therefore, establish the "time allowed for acceptance or pay-
ment" by the Bank.

"Presumably the time allowed [a payor bank to act with regard
to documentary drafts not presented under a letter of credit] could be
specified, but more likely it is to be found in the practice and behav-

ior of the parties to the transaction or the persons in the trade." 1 White & Summers, Uniform Commercial Code, § 17-6, p. 856 (3d ed. 1988). In the instant case, there was *no* definite specification of "the time allowed" for the Bank to act on the five documentary drafts presented to it for payment. Compare *Union Bank of Benton v. First Nat. Bank in Mt. Pleasant,* 621 F2d 790, 796 [10] (5th Cir. 1980). The only specification was to the effect that the documentary drafts presented to the Bank were "sight drafts." At most, this denominates the documentary drafts as being "demand" items. As previously noted, however, where a demand item is *also* a documentary draft, the payor bank need not comply with the midnight deadline that is established for other demand items by OCGA § 11-4-302 (a). Accordingly, the mere denomination of a documentary draft as a "sight draft" would not otherwise serve to establish any definite "time allowed" for the payor bank to act pursuant to OCGA § 11-4-302 (b). "It is clear that the 'midnight deadline' applicable to the handling of checks and other demand items is not applicable to the handling of documentary drafts. Banking institutions are permitted a reasonable or 'seasonable' time within which to present, remit or return. [Cit.]" *Memphis Aero Corp. v. First American Nat. Bank,* 647 SW2d 219, 224 [4] (Tenn. 1983) (wherein documentary drafts were denominated merely as "sight drafts").

It follows that the trial court erred in giving the following charge: "Instruments payable on demand include those payable at sight or on presentation and those in which no time [for] payment is stated. *If* you find that the drafts in this case were *not* sight drafts, *then* the payor bank must pay or return the instrument within a reasonable time or a seasonable time." (Emphasis supplied.) This charge, in effect, erroneously instructed the jury that the bank was entitled to a reasonable or seasonable time within which to act *only* if the documentary drafts were *not* sight drafts. In truth, the bank was entitled to a reasonable or seasonable time within which to act *notwithstanding* that it had been presented sight documentary drafts for payment. See *Memphis Aero Corp. v. First American Nat. Bank,* supra at 224 [4].

2. The refusal to give the following request to charge is enumerated as error: "Under the Uniform Commercial Code, [the Bank] is not accountable for the amount of any of [RJE's] drafts unless you find that the drafts were presented to [the Bank] and that the drafts were properly payable. If you find that the drafts were presented and were properly payable, [the Bank] still is not accountable for the amount of any of the drafts unless you also find that [the Bank] did not act on the drafts within a reasonable time. A reasonable time is determined by the nature of the instrument, any usage of banking or trade, and the facts of the particular case."

This request constitutes an accurate statement of the applicable law. A payor bank "has liability under [OCGA § 11-4-302] (b) only for [documentary drafts that are] 'properly payable.' [A documentary draft] is not properly payable unless there are sufficient funds in the account to pay it. . . . [Also the] payor bank may hold [a documentary draft] for 'the time allowed.' [Where, as here, there is no definite specification as to the "time allowed,"] [t]hat time may be quite long." 1 White & Summers, Uniform Commercial Code, § 17-6, pp. 856-857 (3d ed. 1988). The charge as given by the trial court did not otherwise instruct the jury on these accurate and applicable legal principles. It follows that the trial court erred in refusing to give it.

3. Of the five documentary drafts in the series, the last two had been returned for insufficient funds almost immediately after presentment to the Bank. RJE does not contend that these last two documentary drafts were not otherwise returned by the Bank "within the time allowed." Instead, RJE urges that its recovery under OCGA § 11-4-302 (b) for the last two documentary drafts would be authorized under an estoppel theory. According to RJE, the Bank is estopped to deny liability on the last two documentary drafts because it did not comply with OCGA § 11-4-302 (b) as to the first three.

Liability under OCGA § 11-4-302 (b) "is not liability on the document itself but is liability for the mishandling (delay in giving notice or return) of the item." (Emphasis omitted.) *Memphis Aero Corp. v. First American Nat. Bank,* supra at 222. Accordingly, if the Bank did not "mishandle" the last two of the five documentary drafts, it incurs no liability thereon pursuant to OCGA § 11-4-302 (b). See generally *Pennsylvania Nat. Turf Club v. Bank of West Jersey,* 385 A2d 932, 935 [2] (N.J. Sup. Ct. App. Div. 1978). It follows that the trial court erred in denying the Bank's motion for a directed verdict as to its non-liability under OCGA § 11-4-302 (b) for the last two documentary drafts. "Although a party can by estoppel waive a defense, it cannot create a right of action in another party. [Cit.]" *Southern R. Co. v. A. O. Smith Corp.,* 134 Ga. App. 219, 222 (3) (213 SE2d 903) (1975). RJE has no independent right of action under OCGA § 11-4-302 (b) for the "mishandling" of the last two documentary drafts and estoppel cannot be relied upon to create one.

4. There appears to be no jury issue as to whether the five documentary drafts were "presented" to the Bank for payment, the only dispute being whether the Bank acted thereon within the "time allowed" after presentment. Accordingly, although it would not have been error to give the Bank's requested charge on "presentment," it was not reversible error to fail to give that charge.

5. As an alternative theory of the Bank's liability, RJE relied upon OCGA § 11-3-419 (1) (a, b), which provides: "An instrument is converted when: A drawee to whom it is delivered for acceptance ref-

uses to return it on demand; or [a]ny person to whom it is delivered for payment refuses on demand either to pay or to return it. . . ." The trial court's denial of the Bank's motion for a directed verdict as to its non-liability under this conversion theory is enumerated as error.

"The detention of an instrument voluntarily delivered is not wrongful unless and until there is demand for its return. Demand for a return at a particular time may, however, be made at the time of delivery; or it may be implied under the circumstances or understood as a matter of custom. . . . 'Refuses' is meant to cover any intentional failure to return the instrument, including its intentional destruction. It does not cover a negligent loss or destruction, or any other unintentional failure to return." 6 Anderson, Uniform Commercial Code, § 3-419:1 (2), p. 418 (3d ed. 1984).

No explicit or implicit demand for the return of the documentary drafts by any particular time was made *at the time of their delivery* to the Bank. Compare *New Ulm State Bank v. Brown,* 558 SW2d 20, 24 [1] (Tex. Civ. App. 1977) (specific instruction not to hold the item after maturity or for the convenience of the payor). The only specification here was the denomination of the documentary drafts as "sight drafts." Standing alone, this might be sufficient to classify the documentary drafts as "demand" items pursuant to OCGA § 11-3-108. Because the five demand items were *also* documentary drafts, however, the Bank was specifically authorized pursuant to OCGA § 11-4-302 (b) to accept, pay or return them within a reasonable or seasonable time rather than required to do so within the time limit generally applicable to other demand items. *Memphis Aero Corp. v. First American Nat. Bank,* supra at 224 [4]. It is OCGA § 11-4-302 (b), not OCGA § 11-3-108, which governs as to the "time allowed" the Bank for responding to the *original* presentment of the documentary drafts to it for payment. OCGA § 11-4-102 (1). Accordingly, an otherwise untimely failure on the part of the Bank to accept, pay or return the documentary drafts pursuant to their *original* specification merely as "sight drafts" may be actionable as a failure to comply with OCGA § 11-4-302 (b), but could not constitute an intentional "refusal" to comply with a demand for payment or return so as to be actionable as a conversion under OCGA § 11-3-419. Compare *New Ulm State Bank v. Brown,* supra at 24 [1].

It is undisputed that, when subsequent inquiry was made as to why the documentary drafts had yet to be paid or returned, the Bank responded by returning them for insufficient funds. Thus, in response to the *first* demand for payment or return that was ever made *after* the original presentment of the documentary drafts for payment, the Bank returned them. In so doing, the Bank may have acted untimely and incurred liability under OCGA § 11-4-302 (b), but it did not incur

liability under OCGA § 11-3-419 for conversion of the documentary drafts. It follows that the trial court erred in denying the Bank's motion for a directed verdict as to its non-liability under a conversion theory.

6. RJE had no direct dealings whatsoever with the Bank and was not its customer. Compare *First Ga. Bank v. Webster*, 168 Ga. App. 307, 308 (1) (308 SE2d 579) (1983). The Bank was merely the payor bank as to documentary drafts which had been made payable to RJE. OCGA § 11-4-101 et seq. constitutes a comprehensive compilation of the legal duties imposed upon the Bank as to items presented to it for collection in its capacity as the payor bank. "Action or inaction approved by [OCGA § 11-4-101 et seq.] . . . constitutes the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearing-house rules and the like or with a general banking usage not disapproved by [OCGA § 11-4-101 et seq.], prima facie constitutes the exercise of ordinary care." OCGA § 11-4-103 (3). Accordingly, if the Bank violated OCGA § 11-4-302 (b), it violated the applicable standard of ordinary care for a payor bank and would be liable to RJE. Conversely, if it complied with OCGA § 11-4-302 (b), it complied with the applicable standard of ordinary care for a payor bank and would not be liable to RJE. It follows that the trial court erred in denying the Bank's motion for a directed verdict as to its non-liability under a common law negligence theory. "[W]here[, as here,] the [Uniform Commercial] Code provides a comprehensive remedy for parties to a transaction, a common law action would be barred. [Cit.]" *First Ga. Bank v. Webster,* supra at 308 (1). See also *Brannon v. First Nat. Bank of Atlanta*, 137 Ga. App. 275, 278 (3) (223 SE2d 473) (1976).

7. There is no evidence which would authorize a finding of the Bank's liability for punitive damages or attorney's fees. Accordingly, assuming without deciding that punitive damages and attorney's fees can ever be recovered in an action against a payor bank predicated upon an alleged violation of OCGA § 11-4-302, the trial court erred in failing to grant the Bank's motion for a directed verdict as to its non-liability for those elements of damage in the instant case.

8. The judgment is reversed with direction that the trial court enter judgment in accordance with the Bank's motions for a directed verdict and that a new trial be conducted as to the limited issue of the Bank's liability under OCGA § 11-4-302 (b) for the face amount of the first three documentary drafts.

## Case No. A92A0267

9. RJE's enumerations have been considered and found to be without merit or moot.

*Judgment in Case No. A92A0266 reversed with direction. Judgment in Case No. A92A0267 affirmed. Pope and Johnson, JJ., concur.*

DECIDED JUNE 3, 1992.

*Kilpatrick & Cody, Thomas C. Harney, Timothy H. Kratz,* for appellant.
*John C. Bach, Robert J. Hulsey,* for appellee.