887 P.2d 285

Johnnie SHANNON, d/b/a Autos Unlimited, Plaintiff–Appellant,

v.

SUNWEST BANK OF ALBUQUERQUE, N.A., Defendant–Appellee.

No. 21859.

Supreme Court of New Mexico.

Nov. 23, 1994.

Michael Allison, Albuquerque, for appellant.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Margaret Lewis Meister, William C. Scott, Albuquerque, for appellee.

## OPINION

RANSOM, Justice.

Johnnie Shannon, doing business as Autos Unlimited, appeals from the trial court's entry of summary judgment in favor of Sunwest Bank of Albuquerque in Shannon's suit for debt and money due. Shannon claimed that Sunwest was a payor bank bound by the "midnight deadline" rule and that Sunwest failed to return in a timely manner two drafts issued to Shannon as part of a transaction involving the sale of two vehicles. We affirm.

*Facts and proceedings.* In November 1991 Shannon sold two vehicles to Midwest Motors of Albuquerque. Midwest Motors issued to Shannon two drafts payable to Autos Unlimited. Shannon presented the drafts to Amarillo National Bank, which in turn forwarded the drafts to Sunwest. Sunwest received both drafts on December 3. On December 11 Sunwest returned the unpaid drafts to Amarillo National Bank. On December 27 Sunwest again received the drafts and returned them unpaid on January 6, 1992. On January 27 Sunwest received the drafts for a third time and returned them unpaid on that date.

Midwest Motors closed its business on December 11, 1991, and Shannon never was able to collect on the drafts. Subsequently, Shannon sued Sunwest for debt and money due, alleging that Sunwest's untimely dishonor and return of the drafts caused Shannon damages in an amount equal to the face value of the drafts. Specifically, Shannon argues that, because the drafts are three-day sight drafts, as a payor bank Sunwest had a duty under the Uniform Commercial Code to return them by the "midnight deadline" three days after it received them. *See* NMSA 1978, § 55–4–302(a) (holding payor bank accountable for retaining draft without payment or rejection and notice of dishonor beyond "midnight deadline"). Both Sunwest and Shannon filed motions for summary judgment. The trial court granted Sunwest's motion and denied Shannon's motion. At the time of the hearing on the motions for summary judgment Shannon retained title to and possessed the two vehicles.

*Sunwest was a payor bank.* Sunwest argues that it had no duty to return the drafts by the midnight deadline because it was a collecting bank and not a payor bank in this transaction. Under the law applicable at the

time these drafts were issued, a "collecting bank" is defined as "any bank handling the item for collection except the payor bank." NMSA 1978, § 55–4–105(d). A "payor bank" is defined as "a bank by which an item is payable as drawn or accepted." Section 55–4–105(b). The payor bank is a drawee on the instrument. *See Engine Parts, Inc. v. Citizens Bank of Clovis,* 92 N.M. 37, 41, 582 P.2d 809, 812 (1978).

██ To determine the status of a party to a negotiable instrument, this Court looks to the instrument itself. *Id.* at 40, 582 P.2d at 811. The status of the party is determined by the drawer in executing the instrument. *Id.* If the draft is unclear, the court will resolve any ambiguities. *Id.* In this case the draft is a two-sided envelope draft. On one side Sunwest's name is handwritten on that portion of the draft where the drawee is most often designated. On the other side Midwest Motors' name is typewritten in the box entitled "payer" and Sunwest is designated as the party to which the envelope should be mailed. Given that Midwest Motors signed the handwritten side, it is apparent that it filled out that side and intended to designate Sunwest as the drawee.[1] Thus on the face of the instrument Sunwest is the payor bank.

*The drafts were documentary drafts.* Sunwest argues that it was a collecting bank because the instruments were documentary drafts, and it did not have the authority to draw money from Midwest Motor's account for payment of documentary drafts. Alternatively, Sunwest argues that even if it is a payor bank, it was not bound by the midnight deadline contained in Section 55–4–302(a) because the instruments were documentary drafts.

██ Under the law applicable to this case, a "documentary draft" is defined as either "any negotiable or non-negotiable draft with accompanying documents, securities or other papers to be delivered against honor of the draft," NMSA 1978, § 55–4–104(1)(g) (Cum. Supp.1991), or as "one honor of which is conditioned upon the presentation of a document or documents," NMSA 1978, § 55–5–103(1)(b) (Cum.Supp.1991). Sunwest argues that the instruments in this case are documentary drafts because both instruments contain the phrase "Deliver attached documents only upon payment."

██ The record contains unrebutted evidence that the instruments in this case are envelope drafts containing documents that Sunwest was to deliver to Midwest Motors upon acceptance of the drafts. Shannon argues that the instruments are not documentary drafts because they do not say as much on the face of the drafts, citing for support *Engine Parts, Inc.,* 92 N.M. at 40, 582 P.2d at 812. In *Engine Parts, Inc.,* however, the Court did not discuss the status of the draft; rather, the Court discussed the status of the parties to a draft. The more widely accepted rule is that "[a] draft written on an envelope is a documentary draft when it purports to contain title certificates to motor vehicles that were to be delivered when the draft was honored." 6A Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 4–104:6, at 1006 (3d ed. 1993). Because the instruments received by Sunwest purported to contain documents necessary to the sale of an automobile, they are documentary drafts as defined by the Uniform Commercial Code. *See* § 55–4–104(1)(g).

Sunwest's status as a payor bank is not changed by the fact that the instruments are documentary drafts. But, because the instruments are documentary drafts, Sunwest is not bound by a midnight deadline. Section 55–4–302(a) (specifically excluding documentary drafts from midnight deadline). Because Sunwest is not bound by the midnight deadline, we do not address its argument

---

1. It is unclear who typed in the information on the other side of the draft. If it was Amarillo National Bank, that information does not change the status of Sunwest. *Cf. Engine Parts, Inc.,* 92 N.M. at 40, 582 P.2d at 812 (stating that information attached by collecting bank is "irrelevant in ascertaining who the drawee of the instrument is"). If it were the parties, that information is at best ambiguous because, although it designates Midwest Motors as the "payer," the draft was to be sent to Sunwest for payment, indicating that Sunwest was the drawee. We believe that the clear designation of Sunwest as the drawee on the handwritten side controls over the ambiguous designations of Midwest Motors and Sunwest on the typewritten side.

that it is a collecting bank because it does not have the authority to draw funds from Midwest Motors' account for payment of documentary drafts.

*Sunwest returned the documents within a reasonable time period.* Shannon argues that even if the instruments are documentary drafts, Sunwest is liable because it did not promptly dishonor the drafts. As a payor bank, Sunwest is liable to Shannon under Section 55–4–302(b) "if it fails to carry out its duties and if [the draft] is a 'properly payable item.'" *Memphis Aero Corp. v. First Am. Nat'l Bank,* 647 S.W.2d 219, 224 (Tenn.1983). Sunwest failed to carry out its duties if it did not pay the item or return it and accompanying documents "within the time allowed for acceptance or payment." Section 55–4–302(b).

■ Shannon argues that because the draft stated on its face that it was a three-day sight draft, the "time allowed for acceptance or payment" was three days. The uncontroverted evidence is that Sunwest waited at least eight days to return the draft after it was first presented by Amarillo National Bank. Thus, under Shannon's theory, Sunwest would be liable because it did not return the draft within the three-day period. In response, Sunwest argues that there is no time limit specified in Section 55–4–302(b) and that because the item was a documentary draft the "time allowed for acceptance or payment" should be governed by Section 55–4–501, which requires that the bank "seasonably notify" a customer that the draft has not been paid or accepted. According to Sunwest, eight days constitutes seasonable notification, and it should not be held liable to Shannon.

Very few courts have addressed this issue, but those that have generally hold that the payor bank will not be held liable if it returns unpaid drafts within a reasonable or seasonable time period. *See, e.g., Memphis Aero Corp.,* 647 S.W.2d at 224 ("Banking institutions are permitted a reasonable or 'seasonable' time within which to present, remit or return [documentary drafts]."); *Suttle Motor Corp. v. Citizens Bank of Poquoson,* 216 Va. 568, 221 S.E.2d 784, 788 (1976) (stating that bank has duty to act "reasonably and season-

ably"). In some cases, however, the parties have expressly instructed that the draft should be returned within a specified time, and the express instruction will bind the payor bank. *See, e.g., First State Bank of Sherwood v. Twin City Bank of N. Little Rock,* 290 Ark. 399, 720 S.W.2d 295, 296 (1986) (holding payor bank bound by express instruction not to hold drafts more than three days).

In this case there is no express instruction not to hold the drafts more than a certain number of days. Although on its face the draft is designated as a three-day sight draft, that designation simply identifies the draft as a "demand item." *See Bank South, N.A. v. Roswell Jeep Eagle, Inc.,* 204 Ga.App. 432, 419 S.E.2d 522, 523–24 (1992) (stating that designation of item as sight draft at most denominates drafts as a demand item). It does not establish the liability of any of the parties. To determine whether Sunwest seasonably returned the draft, this Court must look at the facts of the case and the regular practice of the bank. *See id.* at 523; *Memphis Aero Corp.,* 647 S.W.2d at 224–25. In this case it was Sunwest's regular practice to contact Midwest Motors before accepting a documentary draft. When Sunwest was informed that Midwest Motors would not honor the drafts, it returned them to Amarillo National Bank. The whole process took eight days, and this time period falls within the two to ten days that is considered customary for holding a documentary draft. *See Memphis Aero Corp.,* 647 S.W.2d at 225. Therefore Sunwest seasonably returned the drafts to Amarillo National Bank, and it should not be held liable to Shannon.

*Conclusion.* Because Sunwest seasonably returned the documentary drafts, it is not liable under Section 55–4–302(b) of the Uniform Commercial Code. The trial court's entry of summary judgment in favor of Sunwest and against Shannon is affirmed.

**IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI and FROST, JJ., concur.